Brenda McKINNEY, Appellant,

v.

STATE of Tennessee, Appellee.

Court of Criminal Appeals of Tennessee.

Feb. 17, 1977.

Certiorari Denied by Supreme Court
May 9, 1977.

Michael Edwards, Hendersonville, for appellant.

Brooks McLemore, Atty. Gen., William O. Kelly, Asst. Atty. Gen., Nashville, O'Brien Price, Dist. Atty. Gen., Springfield, for appellee.

## OPINION

BYERS, Judge.

The Appellant was found guilty of violation of T.C.A. § 39–4202—larceny—in the Criminal Court of Sumner County and sentenced to serve not less than three (3) years nor more than three (3) years in the penitentiary.

The Appellant says the evidence is insufficient to support the verdict of the jury and that the evidence preponderates against the verdict of the jury, that the conviction is based only upon the uncorroborated testimony of an accomplice, and that the trial court prevented the Appellant from showing good character on the question of whether she would commit a crime.

We overrule the assignments of error and affirm the judgment.

This case is somewhat unique because the allegations against the Appellant are that she, the manager of a convenience market, conspired with her nephew, Randall Blair, to have him enter the store and fake an armed robbery of the business, and that afterward, Blair divided the money obtained with the Appellant.

On the morning of March 16, 1976, at approximately 9:30 a.m., Sumner County officers, and an agent of the T.B.I. went to the Majik Mart in Sumner County in response to a report of an armed robbery. When they arrived, the Appellant reported that two (2) men had entered the market and, by use of a pistol, caused her to surrender to them money, money orders, checks, and a money order writing machine which belonged to the Majik Mart, a business owned by Munford Foods, Inc. The Appellant described the two (2) men but related she did not know either of them. During the occurrence she stated the pistol was fired with the bullet going into the ceiling. The officers found an empty shell on the floor.

While the officers were questioning the Appellant, Randall Blair and a man named Timothy Powers arrived at the market in a vehicle. When these men appeared, the Appellant fainted. The Appellant was taken to the hospital and remained a patient for some time.

The officers were informed by witnesses that a 1957 Chevrolet automobile, white, with mag wheels, was seen at the market at the approximate time of the reported robbery. As a result of this information, the officers located a similar vehicle later in the day. When the vehicle was stopped, it was occupied by Randall Blair, Timothy Powers,

and Robert Blair. These three (3) men denied any knowledge of the events at the Majik Mart and were released.

The evidence shows that Blair had thrown the check writing machine into a creek. He, along with Timothy Powers, had disposed of checks and other unwanted items throwing them in a river. A message, of disputed origin, was given to Randall Blair, directing him to call the Appellant at the hospital. This message was written on an envelope at the home of the Appellant's mother.

On the afternoon of the day of this event, Randall Blair went to a service station where a sixteen (16) year old boy named James Crunk worked. Blair gave young Crunk the envelope on which the message directing him to call the Appellant was written, two hundred twenty-seven dollars and twenty cents ($227.20) in currency, and a .25 caliber pistol. Blair asked Crunk to get rid of the pistol, and to deliver the money to the Appellant and tell her that was her share from the market. The amount of money taken from the Majik Mart was four hundred fifty-nine dollars and sixty-four cents ($459.64). Blair then left Tennessee and went to Oklahoma.

James Crunk became concerned about the items in his possession because an officer visited the station and informed him that they knew Blair had been there. Subsequently, after talking with relatives, Crunk delivered these items to the police. The following day, Blair called Crunk from Oklahoma. Crunk informed Blair that he had given the items left with him to the police.

Blair testified that after he called Crunk and received the information that the police had the items he called the Appellant at the hospital. The Appellant says that she never received this call. However, an employee of the telephone company testified that a call was made from Oklahoma by Randall Blair to a person of the same name as the Appellant at the hospital in Tennessee. This employee testified that the call was charged to a Tennessee phone number listed in the Appellant's name. This conversation lasted approximately fifteen (15) minutes.

Blair testified that in the conversation the Appellant advised him to not say anything that the police knew nothing. Blair says he told Appellant that James Crunk had gone to the police.

Sometime after this call, an officer testified that the Appellant called him at the police station and reported that she recalled who had robbed her. She reported that it was James Crunk and a boy named Mike who had committed the crime.

The T.B.I. ran a ballistic comparison on the .25 caliber shell found at the market and on the .25 caliber pistol which Blair had given Crunk. The comparison showed the shell had been fired from this pistol.

The Appellant maintains in her testimony that she was the victim of an armed robbery and that she did not conspire or confederate with Blair to take her employer's money.

The Appellant's insistence that there was insufficient corroboration of the accomplice Blair's testimony is not well taken.

The rule is that there must be some fact testified to, entirely independent of the accomplice's testimony which, taken by itself, leads to an inference, not only that a crime has been committed, but also that the accused is implicated in the crime. *State v. Fowler,* 213 Tenn. 239, 373 S.W.2d 460 (1963). The corroborative evidence may be direct or circumstantial. It need not be, of itself, sufficient to support a conviction. If the corroborating evidence fairly and legitimately tends to connect the accused with the commission of the crime charged, it satisfies the requirement of the rule on corroboration of an accomplice's testimony. *Sherrill v. State,* 204 Tenn. 427, 321 S.W.2d 811 (1959). Slight circumstances may be sufficient to furnish the necessary corroboration of an accomplice's testimony. *Garton v. State,* 206 Tenn. 79, 332 S.W.2d 169 (1960). The question of corroboration of an accomplice's testimony is for the jury to determine. *Clapp v. State,* 94 Tenn. 186, 30 S.W. 214 (1895). The jury may look at all the evidence in the case and draw reasonable inferences therefrom.

As said by the Court in *Hawkins v. State,* 4 Tenn.Crim.App. 121, 469 S.W.2d 515 (1971):

"The quantum of evidence sufficient to corroborate the testimony of an accomplice is for the determination of the jury. From the facts proved in evidence the jury is entitled to draw reasonable inferences, and this Court may not substitute its judgment or inference for those of the jury."

We are of the opinion, in this case, that the accomplice, Randall Blair's, testimony was corroborated in several aspects. Independent evidence shows that a gun which was in the possession of Blair during the alleged robbery was fired in the interior of the Majik Mart at the time of the event. Thus, it is reasonable to assume he was present in the market as he said. Blair is the nephew of the Appellant. The Appellant reported to the officers that she did not know who had robbed her. There is evidence that after she learned from Blair that Crunk had turned certain evidence over to the police, she called the police and reported that she recalled that it was Crunk and another man who robbed her. There is evidence, also, that soon after the offense an effort was made to have Blair contact the Appellant at the hospital. The jury could reasonably conclude that the Appellant initiated this move. The Appellant says that she did not receive a call from Blair while he was in Oklahoma. The evidence strongly supports the inference that she did. Crunk testified that Blair gave him a sum of money practically equal to half of the sum taken and said it was for the Appellant. The police received the money from Crunk along with an envelope listing the Appellant's name and the hospital where she was a patient.

■ We think the evidence developed in this case, not only by independent witnesses, but also by the actions of the participants, was sufficient for the jury to find that the accomplice's testimony was corroborated.

■ We think the action of the trial judge in excluding the evidence of Appellant's good character offered through one of the witnesses was error. However, it was harmless error.

The Appellant, prior to testifying, wished to show through her mother that she was of good character. When the State objected, the trial judge ruled that until a person had testified that character evidence showing their credibility as a witness is not admissable.

■ The trial judge is correct on his ruling as to the question of credibility of a person as a witness who has not testified. However, in a criminal prosecution, the issue of good character and reputation is two pronged. A person accused of a crime is entitled to have evidence of their good character shown as tending to show that they would not commit a crime. In addition, if testifying as a witness, they may show good character and reputation in support of the proposition that their testimony is entitled to full faith and credit by the jury. An accused may not, of course, show evidence of his credibility as a witness by the use of character witnesses unless he first testifies. This is so because his credibility as a witness is not at issue until he testifies. However, an accused may offer evidence of his good character and reputation as tending to show that he would not commit a crime, and the jury may consider this along with the other evidence to determine if there is reasonable doubt of an accused's guilt. *Roman v. State,* 1 Tenn.Cases (Shannon) 470. The accused may offer character evidence for this purpose even though he does not testify in his own defense. *Morrison v. State,* 217 Tenn. 374, 397 S.W.2d 826 (1965), rehearing denied, 400 S.W.2d 237 (Tenn. 1966).

In this case, however, the Appellant showed through two (2) employees of the Majik Mart the good and honest character of the Appellant prior to the event. In addition, the Appellant showed through a defense witness, without objection, that she had a good reputation in the community as to truth. Therefore, we are of the opinion that the error complained of was harmless error. T.C.A. § 27–117.

The Appellant further complains that the evidence preponderates against the verdict and that the verdict is not supported by the evidence.

Appellant does not argue these assignments but only asks the Court to review the evidence in this case.

We have reviewed the evidence and the record in this case. We do not find that the evidence preponderates against the verdict. *McBee v. State,* 213 Tenn. 15, 372 S.W.2d 173 (1963).

The judgment of the trial court is affirmed.

O'BRIEN and DUNCAN, JJ., concur.