STATE of Tennessee, Appellee,

v.

Mark A. HENSLEY, Appellant.

Court of Criminal Appeals of Tennessee, at Knoxville.

June 27, 1983.

Permission to Appeal Denied by Supreme Court Aug. 29, 1983.

J. Andrew Hoyal II, Asst. Atty. Gen., Nashville, Charles Fels, Asst. Dist. Atty. Gen., Knoxville, for appellee.

Bob R. McGee, Jimmy Kyle Davis, Knoxville, for appellant.

## OPINION

DAUGHTREY, Judge.

The defendant, Mark A. Hensley, and his co-defendant, Bobby D. Reynolds, were charged with vehicular homicide and aggravated assault. Reynolds was acquitted on all counts, but the defendant was found guilty on both charges and sentenced to consecutive sentences of 13 years on the vehicular homicide count and two to four years on the aggravated assault count.

On appeal, Hensley's principal complaints concern (1) the sufficiency of the convicting evidence; (2) the validity of the indictment and (3) the trial court's decision to permit its amendment; (4) the trial court's failure to grant a severance; (5) the admissibility of certain evidence offered at trial, including pre-trial statements that Hensley made to police investigators; and (6) the propriety of the trial court's consecutive sentencing order. We find no reversible error in connection with these issues, and we therefore affirm the convictions.

The proof showed that during the afternoon and evening of April 15, 1981, Hensley and Reynolds drove around Knox County and the surrounding area while drinking a great deal of beer and wine. They made several stops to replenish their supply of alcohol.

That same night, Tim Roop and Jerry Buhl had a flat tire on the Maynardsville Highway. They pulled the car three to four feet off the side of the highway and called Stanley Kasior to come and help them. Kasior arrived with Paul Wolfenbarger, and they and Buhl went to get a can of tire-fix-it to patch the tire.

The three men returned at approximately 10:30 p.m. and pulled Kasior's truck in about ten feet from the car. The truck had on its flashing emergency lights and the car had on its parking lights. The night was clear, and although there were no street lights, the businesses in the area provided lighting.

Roop was squatting directly in front of the flat tire applying the tire-fix-it and the other three were standing around the tire when the car driven by Hensley struck the men, killing Roop and severely injuring the others. When the car came to a halt, the defendant jumped out and ran away. Reynolds was still in the vehicle when the first officer arrived on the scene. He then got out of the car and tried to walk away but was apprehended nearby.

Both men gave confessions to the police. The defendant, who was finally arrested in Florida as a fugitive, admitted that he had been drinking on the day in question. He said that he remembered a crash, but he would not admit that he had been driving the car. However, Reynolds told police that the defendant was driving the car at the time of the crash. Reynolds also said that he did not see the crash because he was reaching down to right a bottle of wine when it happened.

The defendant asserts that the evidence is insufficient to support the jury's verdict because, he says, there was no direct evidence that he was driving the car at the time of the incident. However, there was direct evidence of Hensley's guilt in the form of his co-defendant's statement to police and his testimony that Hensley was driving the car when it hit the victims.

Of course, a defendant cannot be convicted solely on the uncorroborated testimony of an accomplice. Instead, "[t]here must be some fact testified to, entirely independent of the accomplice's testimony which, taken by itself, leads to an inference, not only that a crime has been committed, but also that the accused is implicated in the crime." *McKinney v. State,* 552 S.W.2d 787, 789 (Tenn.Cr.App.1977). The corroborating evidence need not be sufficient to support a guilty verdict by itself, and the evidence may be circumstantial. *Id.* In this case, the defendant admitted that he was in the car at the time of the crash, and the car belonged to him. He was also the only occupant of the car who fled the scene after the wreck. Assuming that Reynolds

was an accomplice, these facts provided sufficient corroboration of his testimony. We thus find no merit to the contention that the evidence is not legally sufficient.

■ The defendant next claims that the indictment should have been dismissed because it failed to allege whether he was charged as the driver or the passenger, *i.e.*, as a principal or as an aider and abettor. However, T.C.A. § 39–1–103 makes aiders and abettors punishable as principal offenders, and under case law the distinction between the two has been abolished, so that an indictment of an aider and abettor "need not aver any facts further than those requisite to an indictment of a principal." *Cavert v. State*, 158 Tenn. 531, 14 S.W.2d 735, 738 (Tenn.1929). Thus, the trial judge did not err in declining to dismiss the indictment on this basis. If the defendant needed further information (for example, concerning the state's theory about his position in the car) in order to prepare his defense, he should have moved for a bill of particulars under Rule 7(c), Tennessee Rules of Criminal Procedure.

We likewise find no error in the trial court's decision to permit an amendment to the indictment. The third count of the indictment charged the appellant with aggravated assault of Stanley Kasior, Jerry L. Buhl and Paul L. Walker, and elsewhere on the indictment Paul Wolfenbarger was listed as a witness. On the day the trial began, the prosecutor stated that the name of the victim was actually Paul Wolfenbarger, not Paul L. Walker, and he moved to amend the indictment to reflect this.

■ Rule 7(b) of the Rules of Criminal Procedure provides that an indictment may be amended without the defendant's consent only "if no additional or different offense is thereby charged and no substantial rights of the defendant are thereby prejudiced." The general rule appears to be that amendments to correct errors in the victims' names are permissible. *Wharton's Criminal Procedure* § 364 (12th Ed.1975). Obviously, this amendment did not cause the defendant to be charged with additional and different offenses.

■ Also significant is the fact that Hensley was unable to show how he would be prejudiced by this change. His co-defendant did not object to the amendment because he was aware of the mix-up, and it was brought out that the defendant had made only a minimal effort to locate either Paul Wolfenbarger or Paul L. Walker. Moreover, the trial court stopped the proceedings to allow defense counsel to interview Wolfenbarger. We therefore conclude that Hensley was not prejudiced by the amendment and that the trial judge did not err in permitting it.

■ Prior to trial, the defendant moved for a severance, citing a potential *Bruton* problem. As it turned out, however, the state did not introduce co-defendant Reynolds's statement. Instead, it was introduced by Reynolds during his own testimony, and defense counsel had an opportunity to cross-examine him about it. Thus, there was no actual *Bruton* problem, and the failure to sever in anticipation of a theoretical *Bruton* problem was clearly not error.

The defendant next claims that he was subjected to lengthy interrogation before he was informed of his *Miranda* rights and that questioning continued despite his repeated requests for an attorney. The police testified, however, that they had advised Hensley of his rights and secured a written waiver before interrogation began. They further said that the defendant first made an oral confession which was handwritten by a secretary and signed by Hensley. While they were waiting for the statement to be typed, one of the two officers present asked Hensley about a reference he had made in his statement to a car he purportedly bought in Kentucky. The defendant responded that he did not want to talk about that particular incident until he had conferred with an attorney. According to police, they did not ask Hensley any more questions after that time, although they apparently did ask him to read over and sign the typewritten copy of his earlier statement, which he did.

■ The trial court accredited the officers' version of Hensley's interrogation, finding that his *Miranda* rights had not been violated. We agree with this conclusion. There is sufficient evidence in the record to support the proposition that the officers "scrupulously honored" Hensley's "right to cut off questioning." *See generally Michigan v. Mosley,* 423 U.S. 96, 102–104, 96 S.Ct. 321, 325–327, 46 L.Ed.2d 313 (1975). The fact that the defendant thereafter signed his previous statement does not violate the *Mosley* rule nor the *Miranda* doctrine upon which that rule is based. Thus, there was no error in the trial court's denial of the defendant's motion to suppress.

■ We do find fault, however, with the trial judge's decision to admit parts of the testimony of Gloria Roop, the widow of the deceased victim in this case. She was the first witness called by the prosecution at trial and was permitted to testify to facts which would more appropriately been admitted in a wrongful death suit. She testified, for example, that her husband was a veteran disabled from a war wound, that he was an evangelist and active in church activities, that he never drank alcohol, and that, while she did not work before his death, since then she had been forced to become a maid to support their three children. She was also allowed to introduce a photograph of herself, her husband, and two of their children.

This testimony was given in a brief and straightforward manner, but it was nevertheless irrelevant and obviously designed to raise sympathy for the deceased victim and his family. Its prejudicial effect to the defendant is difficult to determine. In view of the overwhelming evidence of Hensley's guilt, however, and the fact that the jury imposed substantially less than the maximum possible penalty in this case, we conclude that the objectionable portions of the widow's testimony more probably than not did not affect the outcome of the trial, and that any error in this regard was harmless at most. We nevertheless caution against the use of such testimony in the future.

During trial, the state was allowed to introduce testimony that the police department had received a telephone call a short time after the incident, from someone who identified himself as the defendant. This caller gave the defendant's address, birth date, and telephone number as his own and stated that his 1976 orange Plymouth Arrow 200 hatchback had been stolen 35 minutes prior to his placing the call. The car he described was the one involved in the wreck.

■ While the defendant concedes that "any attempt to suppress or destroy or conceal evidence is relevant as a circumstance from which guilt of an accused so acting may be inferred," *Hicks v. State,* 533 S.W.2d 330, 334 (Tenn.Cr.App.1975), he claims that there was no need for this evidence to be admitted because he conceded being in the car when it struck the victims. To the contrary, however, we conclude that the testimony was relevant to show an attempt by Hensley, within minutes after the wreck occurred, to cast suspicion away from himself and on to someone else. We thus find that the probative value of this evidence outweighed any prejudicial effect to the defendant and that the trial court did not err in admitting it.

The defendant next contends that the trial court's consecutive sentencing order should be set aside. Hensley received a 13 year sentence for killing Roop, and a two to four year sentence for the collective assault on his three other victims. The trial judge found that consecutive sentencing was justified because Hensley was a "dangerous offender" under *Gray v. State,* 538 S.W.2d 391 (Tenn.1976). In that case, a dangerous offender is defined as a person who is convicted of crimes which "indicate that he has little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high." *Id.* at 393.

■ In setting out his reasons for his conclusion, the trial judge took note not only of the human carnage involved in the offense, but also of Hensley's behavior be-

fore and after the wreck. He noted, for example, that Hensley had "driv[en] a vehicle around all over the county for some time while under the influence of an intoxicant." Indeed, the record shows that over a period of several hours many people in Knox County were endangered by Hensley's activities, not just those who were involved in this case.

The trial judge also drew attention to Hensley's culpability in fleeing from the scene. We think this point is worth emphasizing. The proof shows that when Hensley fled, he left behind in the road several injured and dying persons, making no effort to assist them. Yet despite the defendant's intoxicated condition, there is little doubt that he knew what he was doing, for within minutes after the event occurred, he was engaged in a scheme to cover up his own part in it. Under these circumstances, we conclude that the defendant qualifies as a dangerous offender who has exhibited little or no regard for human life. It follows that the trial court did not abuse its discretion in ordering consecutive sentencing.

We have reviewed the remaining issues raised on appeal, and we find no merit to them. There is no evidence that the trial court abused its discretion in denying the defendant's oral request to continue the case so that he could retain other counsel. His challenge to the jury selection procedure cannot be reviewed because the voir dire of the jury is not included in the record. The photograph of Hensley introduced at trial fails to reflect anything of an inherently prejudicial nature, and we thus find no error in its introduction.

For the foregoing reasons, the judgment of the trial court is affirmed.

WALKER, P.J., and BYERS, J., concur.