**STATE of Tennessee, Appellee,**

v.

**Jeffrey L. COPELAND and Allen H. Voss, Appellants.**

Court of Criminal Appeals of Tennessee, at Nashville.

April 11, 1984.

Permission to Appeal Denied by Supreme Court July 23, 1984.

William M. Leech, Jr., Atty. Gen. & Reporter, David M. Himmelreich, Asst. Atty. Gen., Nashville, Joseph D. Baugh, Jr., Dist. Atty. Gen., Franklin, for appellee.

White & Carden, Lawrenceburg, for Jeffrey L. Copeland.

Fred D. Thompson, Nashville, for Allen H. Voss.

## OPINION

O'BRIEN, Judge.

Defendants were indicted by the Williamson County Grand Jury and convicted of the offense of possession of two hundred (200) or more grams of methaqualone, a Schedule II controlled substance, with intent to sell or deliver. They were each sentenced to serve a period of twenty (20) years in the penitentiary and assessed a fine of Fifteen Thousand Dollars ($15,000). Voss was also found guilty of possessing a firearm while committing the major offense and received an additional sentence of not less than three and one-half nor more than five (5) years.

The State's proof was that in the early part of January, 1982, after a series of telephone communications, TBI Agent Jerry Kitchen arranged to purchase from defendant Copeland 3,000 quaalude tablets for an agreed upon price. Subsequent evidence established these tablets contained the drug methaqualone. All the telephone conversations and the drug transaction were tape recorded by Kitchen. At the scheduled time and place Kitchen and TBI Agent Morris waited for Copeland, who arrived in a blue pickup truck. Defendant Voss was a passenger in the truck. Copeland got into the vehicle occupied by Kitchen and Morris, counted the Sixty-Eight Hundred Dollars ($6,800) Morris brought to purchase the drugs, and discussed the quality of the drugs he was selling as well as other prior drug transactions. In the course of the conversation Copeland said he could purchase drugs in Florida and inquired if Kitchen could obtain some acid. Copeland then went to his truck, parked a few feet away, and procured the drugs which were in a paper sack behind the truck seat. The truck was equipped with a bench type seat and defendant Voss leaned forward to allow Copeland to get behind the seat. Copeland returned to the agent's vehicle, and handed Kitchen the drugs. At that time both he and Kitchen were arrested by other agents and the drugs confiscated. Voss was arrested simultaneously and removed from the truck. Kitchen was arrested to maintain his cover.

Both defendants say the State failed to prove that 200 grams or more of the controlled substance methaqualone was contained in the pills confiscated from defendant Copeland. This is also the grounds upon which Copeland insists he was entitled to a verdict of acquittal. After the motions for acquittal, made at the close of the State's evidence, were overruled, both defendants put on proof. Counsel for defendant Voss also participated in the cross-examination of Copeland.

In *Mathis v. State*, 590 S.W.2d 449, 453, (Tenn.1979), our Supreme Court specifically said:

"... . Petitioner's counsel, however, did not pursue the matter in accordance with

approved practice. When the court overrules, or does not act, upon a motion for an acquittal made at the conclusion of the State's proof, if counsel is convinced as to the validity of the motion, he or she must then and there take affirmative action to confine the controversy to the proof already presented. He or she should announce that the defendant stands on his motion, will present no proof, disclaims any benefit of any evidence introduced by his co-defendant, disavows any detriment, and should state that the evidence presented by the co-defendant will not be binding upon him, and he should participate no further in the trial until after the conclusion of all the proof. *See Caruther's History of a Lawsuit* § 361 (8th ed. 1963); *See also Pikeville Fuel Co. v. Marsh,* 34 Tenn. App. 82, 232 S.W.2d 789 (1948)."

By failing to stand on their motion, both defendants waived any benefit which might have accrued from their motion of acquittal. Notwithstanding this waiver, the question of the sufficiency of the evidence to show possession of 200 grams or more of a controlled substance is also raised in other issues. The evidence was not contested that Copeland had bargained to sell to the undercover agents a total of three thousand quaalude tablets. These were delivered in three plastic bags purportedly each containing one thousand tablets. Philip Smith, a forensic chemist employed at the Tennessee State Crime Laboratory testified he utilized four different tests for identifying the controlled substance delivered to him. These included a color chemical test, an instrumental analyses by ultra violet spectrophotometry, infra-red spectrophotometry, and gas chromatography. Through these tests he concluded that the tablets examined by him contained methaqualone, a Schedule II substance. The procedure by which he conducted his analyses consisted of first examining the tablets in each bag to ascertain they had the outward characteristics of quaalude tablets. They all appeared the same. He then selected at random ten tablets from each plastic bag upon which he performed the chemical test. He then made a random selection of three tablets from each bag to perform the instrumental test. This was described as a quantitative analysis which would indicate the amount of drug present in the tablets. Gas chromatography provides both a qualitative and quantitative analysis. Prior to beginning the analysis the witness testified he randomly selected twenty tablets which were weighed. The result was divided by twenty to determine the weight of one tablet. By dividing the weight of one tablet into the gross weight of all the tablets he arrived at the approximate number of tablets in the bags, for a total of two thousand nine hundred seventeen (2,917). Taking nine of these tablets, three from each bag, for testing purposes, the witness established that the tablets contained approximately forty-six percent (46%) methaqualone. It was his conclusion that the total number of pills contained approximately ten hundred eighty-seven grams of methaqualone. It is to this process of analysis which defendants object, submitting that the testing procedure was grossly inadequate. Copeland was not entitled to a judgment of acquittal. The evidence was sufficient to meet the essential requirements of *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), and T.R.A.P. 13(e). The weight to be given to the testimony of the witness was a question for the jury. The jury has settled the issue by their verdict.

The trial judge was correct in denying the motion for acquittal of the defendant Voss. This defendant contends his conviction is based solely upon the uncorroborated testimony of an accomplice. The rule is that there must be some fact testified to, entirely independent of the accomplice's testimony which, taken by itself, leads to an inference not only that a crime has been committed, but also that the accused is implicated in that crime. *McKinney v. State,* 552 S.W.2d 787, (Tenn.Cr. App.1977). Copeland implicated Voss by testifying that he obtained the quaalude tablets from him to effect the transaction.

After having made arrangements with Voss to obtain the pills he went to his house on Weakley Creek Road to pick them up. When he arrived there Mr. Voss elected to go with him to transact the sale. The fact that Copeland came to the house, was verified by Beula Marston, a witness called by Voss. She testified that Copeland came there just about dusk dark and asked for Voss. She did not know if Voss took anything with him but he left with Copeland saying he was going for a drive. The officers who participated in the arrest of defendants testified they were in place when Copeland arrived for the rendezvous. He parked his truck within ten feet of the vehicle occupied by Kitchen and Morris Voss sat in the passenger side of the vehicle while Copeland went first to Kitchen's vehicle and counted the money which the officers had brought with them. He returned to his truck to obtain the drugs which were in a paper sack reposing behind the truck seat. Voss leaned forward when he went to procure the drugs enabling Copeland to push the seatback out in order to reach them. As we said in *McKinney,* supra, the corroborative evidence may be direct or circumstantial. It need not be, of itself, sufficient to support a conviction. Slight circumstances may suffice. If the corroborating evidence fairly and legitimately tends to connect the accused with the commission of the crime charged it satisfies the requirement of the rule on corroboration of an accomplice's testimony. The question of corroboration is for the jury to determine. The jury may look at all the evidence and draw whatever reasonable inferences may exist, and this Court may not substitute its judgment or inference for those of the jury. See *Hawkins v. State,* 469 S.W.2d 515, 4 Tenn.Cr.App. 121, (1971). The jury in this case heard the evidence and were satisfied with the guilt of defendant Voss. The evidence was sufficient to warrant their verdict.

■ Voss says the trial court erred in the instructions to the jury on how to consider the testimony of Copeland. The trial judge instructed the jury that, the defendant Copeland having testified, they should give the same weight to his testimony as they did other witnesses, and determine his credibility on the same basis. He did not give instructions on how to receive and consider the testimony of an accomplice. Defendant Voss says the jury should have been instructed on that basis, and we agree. However, at the conclusion of his charge to the jury the trial judge asked counsel if there were any special requests and there were none. In *Bolton v. State,* 591 S.W.2d 446 (Tenn.Cr.App.1979), this Court held that in the absence of a special request there was no error on the part of the trial court in failing to instruct the jury on corroboration of an accomplice. Our Supreme Court denied permission to appeal in *Bolton,* and until such time as they decree the law to be otherwise, we look upon *Bolton* as proper authority on the issue.

A multi-pronged attack has been made on the trial court's instructions to the jury. As we have noted previously there was no objection to the instructions delivered by the court and no special request for appropriate instructions. The instructions to the jury are questioned referring to the inference allowed based on the amount of controlled substance possessed by defendants. The jury was instructed:

"You may infer from the amount of methaqualone possessed by the defendant, if any at all, along with other relevant facts surrounding the arrest, that the methaqualone was possessed with the purpose of selling or otherwise dispensing of them" (sic).

Defendant insists that the subsection of the Drug Control Act under which he was indicted (T.C.A. § 39–6–417(c)(1)), by its terms, does not provide for an inference to be drawn based on the amount of controlled substance possessed. The trial judge did instruct the jury on lesser included offenses. Defendant was entitled to that instruction and the trial court would have been in error if he had failed to charge the jury on the appropriate infer-

**476**

ences to be made on those lesser included offenses.

 Defendant says the instructions on the rule of constructive possession required the jury to make an inference on an inference. The trial court did instruct the jury on constructive possession as well as on joint possession. We think this was proper under the circumstances of the case. Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession. See *State v. Williams*, 623 S.W.2d 121, p. 125 (Tenn.Cr. App.1981), and cited cases. Copeland testified that he obtained the drugs in this case from his co-defendant Voss. That he went to the place where Voss lived and Voss elected to go along, bringing the drugs with him, to the rendezvous where the expected sale was to take place. A witness for Voss verified that Copeland came to the door and asked for Voss, and that Voss left with him. Undercover officers placed Voss in the truck with Copeland at the time of their arrest when the contraband was confiscated. He was armed at the time. This was sufficient evidence to make the question of constructive or joint possession a question for the jury. See *Armstrong v. State*, 548 S.W.2d 334, p. 337, (Tenn.Cr. App.1976).

 We find no merit to the complaint that the charge to the jury did not include instructions that the inference on the possession of the contraband was permissive and not mandatory. We do not see how the instructions in this case could have been viewed by any reasonable juror as creating a conclusive or burden-shifting presumption on intent to sell the controlled substance. See *Connecticut v. Johnson*, 460 U.S. 73, 103 S.Ct. 969, 74 L.Ed.2d 823 (1983). There was nothing in the instructions delivered on this issue which could be construed to be directory. As our Supreme Court said in *Turner v. State*, 541 S.W.2d 398, 402 (Tenn.1976), the trial judge [also]

instructed the jury fully and correctly on the law of circumstantial evidence, the presumption of innocence, the reasonable doubt standard, and made it clear that the burden of proof beyond a reasonable doubt remained upon the State throughout the trial. In *Bush v. State*, 541 S.W.2d 391, p. 397 (Tenn.1976), our Supreme Court has suggested a model for the framing of an appropriate instruction on inferred facts which is strongly recommended to trial judges to avoid reversible error in instructions of this nature.

The judgment of the trial court is affirmed.

DUNCAN and DAUGHTREY, JJ., concur.