# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT JACKSON

### DECEMBER SESSION, 1996

FILED

October 9, 1997

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | ) | **C.C.A. NO. 02C01-9605-CC-00184** |
| | ) | |
| Appellee, | ) | |
| | ) | |
| | ) | **HENRY COUNTY** |
| **VS.** | ) | |
| | ) | **HON. JULIAN P. GUINN** |
| **BRENDA ANNE BURNS,** | ) | **JUDGE** |
| | ) | |
| Appellant. | ) | **(Direct Appeal)** |


FOR THE APPELLANT:

DAVID L. RAYBIN
Hollins, Wagster & Yarbrough, P.C.
2210 SunTrust Center
424 Church Street
Nashville, TN 37219

FOR THE APPELLEE:

JOHN KNOX WALKUP
Attorney General and Reporter

WILLIAM DAVID BRIDGERS
Assistant Attorney General
450 James Robertson Parkway
Nashville, TN 37243-0493

ROBERT RADFORD
District Attorney General
P. O. Box 686
Huntingdon, TN 38344


OPINION FILED _____

REVERSED AND REMANDED

JERRY L. SMITH, JUDGE

# OPINION

On October 19, 1995, a Henry County Circuit Court jury found Appellant Brenda Anne Burns guilty of first-degree murder. Appellant received a sentence of life imprisonment. On appeal, Appellant raises the following issues for review:

1) Whether the evidence is sufficient, as a matter of law, to support her conviction for first-degree murder;
2) Whether the trial court erred by failing to instruct the jury on facilitation to commit first-degree murder and solicitation of first-degree murder;
3) Whether the trial court erred by prohibiting Appellant's attorney from fully cross-examining a State's witness;
4) Whether the trial court erred in denying Appellant's motion for a new trial based on newly discovered evidence or ineffective assistance of counsel; and
5) Whether the cumulative effect of trial errors deprived Appellant of a fair trial.

After a painstaking review of the record, we have concluded that Appellant was denied the effective assistance of counsel and that this case must be reversed and remanded for a new trial.

### Factual Background

On December 15, 1994, the Benton County Sheriff's Department found the body of Paul Burns, Appellant's ex-husband, in the woods beside Mount Carmel Road near Camden, Tennessee. The evidence submitted at trial and accredited by the jury verdict revealed that Michael Spadafina and Vito Licari murdered Mr. Burns at the request of Appellant and in exchange for $10,000.

At the time of the murder, Appellant and Burns were divorced. Burns, a member of the Columbo organized crime family, was living in Camden as part of the federal witness protection program. Burns was approximately sixty-two years

of age and suffered partial paralysis as the result of a stroke. Spadafina took care of Burns. The two had lived in Spadafina's girlfriend's house but Burns later moved into the Wismer Hotel, owned by Appellant. Licari and Spadafina knew each other from prison where they had become friends. Licari was living in New York when Spadafina invited him to come to Tennessee to live with him. Licari moved to Tennessee in October of 1994 during the time Burns was living with Spadafina.

According to Licari who testified for the State, in late November or early December, 1994, Spadafina, Licari, and Appellant met at the Wismer Hotel to discuss the murder of Burns. The parties agreed that Spadafina and Licari would murder Burns and, in return, Appellant would pay them $10,000, to be paid in monthly installments of $800 per month.

On the morning of December 13, Spadafina and Appellant went to collect checks in the amount of $29,750 from an insurance settlement that Burns had received as the result of a house owned by Burn's having burned. Later in the day, Spadafina, Licari, and Burns met in Burns' hotel room. Although Spadafina had picked up all three insurance settlement checks, he told Burns that he had only two of the checks and that he could not pick up the third check until the following day. The three men then went to the bank to negotiate the checks. Burns paid the bank for a loan, gave Spadafina approximately $1139 and deposited $2000 into his minor son's account. After Burns was dropped off at his hotel room, Spadafina told Licari that he had one of the insurance checks which was made out for $5000. Spadafina contacted Appellant and told her that if she could cash the check, she could keep $3500 and he would keep $1500 as a

down payment for the murder of Burns. Appellant signed Burns' name on the back of the check, paying the bank $3500 for her mortgage on the Wismer Hotel and giving $1500 to Spadafina.

Spadafina and Licari then dropped Appellant off at the hotel and went to see Burns. After visiting, the three men and Burns' son went to the liquor store. After returning Burns' son to the hotel, the three men went to dinner. On the way back from dinner, Spadafina gave Licari, who was sitting in the back seat of the car, a signal to strangle Burns. Licari tried to strangle Burns but was not strong enough to do so. Spadafina stopped the car, came around to the passenger side of the car, and slashed Burns' throat. Spadafina and Licari then dragged Burns' body up an embankment and left him.

Spadafina and Licari then went to a car wash to clean the car and dispose of the knife. They next visited Appellant who washed their clothes. At trial, Appellant denied any involvement with her ex-husband's murder. She admitted that she signed the check made out to her husband but claimed that Burns had called her earlier in the day saying that he was sending Spadafina with the insurance check for her to cash at the bank. She claimed that he instructed her to give Spadafina $1500.

## I. Sufficiency of the Evidence

-4-

Appellant first alleges that the evidence presented at trial is legally insufficient to sustain her conviction for first-degree murder. Specifically, she claims that there is no evidence, independent of the testimony of Licari, who was an accomplice as a matter of law, to corroborate Licari's testimony. When an appeal challenges the sufficiency of the evidence, the standard of review is whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 318 (1979); State v. Evans, 838 S.W.2d 185, 190-91 (Tenn. 1992), cert. denied, 114 S. Ct. 740 (1994); Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). This Court will not reweigh the evidence, re-evaluate the evidence, or substitute its evidentiary inferences for those reached by the jury. State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). As the Supreme Court of Tennessee said in Bolin v. State:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

405 S.W.2d 768 (1966). Thus, a jury verdict is entitled to great weight.

Once approved by the trial court, a jury verdict accredits the witnesses presented by the State and resolves all conflicts in favor of the State. State v.

Hatchett, 560 S.W.2d 627 (Tenn. 1978); State v. Townsend, 525 S.W.2d 842 (Tenn. 1975). The credibility of witnesses, the weight to be given their testimony, and the reconciliation of conflicts in the proof are matters entrusted exclusively to the jury as trier of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984). A jury's guilty verdict removes the presumption of innocence enjoyed by the defendant at trial and raises a presumption of guilt. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant then bears the burden of overcoming this presumption of guilt on appeal. State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977).

A conviction may not be based upon an accomplice's testimony unless there is some fact testified to, entirely independent of the accomplice's testimony, which taken by itself creates an inference not only that a crime has been committed but also that the accused is implicated in the crime. Mathis v. State, 590 S.W.2d 449, 455 (Tenn. 1979) (citing McKinney v State, 552 S.W.2d 787, 789 (Tenn. Crim. App. 1977)). The corroborative evidence may be direct or entirely circumstantial, and it need not of itself be adequate to support a conviction. It is sufficient to meet the requirements of the rule if it fairly and legitimately tends to connect the defendant with the commission of the crime charged. Sherrill v. State, 321 S.W.2d 811, 815 (Tenn. 1959).

The record reveals the following corroborating evidence. Appellant signed the name of her husband to an insurance check hours before his death. She testified that before she cashed the check, Burns called her and said he was sending her a check for her to cash and to give $1500 of the check to Spadafina. However, a bank officer testified that when Spadafina and Burns came into the

bank earlier that day, he heard Spadafina tell Burns that he did not have the $5000 insurance check and that he would pick it up the following day. According to the bank officer's testimony, Burns would not have had the third insurance check until the following day. Furthermore, Licari claimed that Appellant gave Spadafina $1500 as a down payment for murdering her ex-husband. Appellant admitted giving $1500 to Spadafina. She also admitted that the killers visited her at the hotel around 10:15 p.m. after committing the murder. She tried to explain the visit by stating that she thought they had come to talk about Mr. Burns. Finally, there was evidence that Appellant had a motive to kill Burns. While Appellant and Burns were married, they owned the Wismer Hotel. As part of the divorce settlement, Appellant bought Burns' interest in the hotel and was indebted to him for $50,000. She also assumed the debt obligations of the hotel. Her total debt was $300,000. At the time of Burns' murder, she was behind in her payments to the bank. The prosecution theorized that Appellant believed that, with Burns' death, she would not only be able to make her delinquent payments to the bank with the $3500 from the third insurance check but also would no longer be indebted to him for $50,000. We find that there was adequate corroboration of Licari's testimony and, therefore, that the evidence is sufficient, as a matter of law, to sustain Appellant's conviction for first-degree murder.

## II. Failure to Instruct

Next Appellant challenges the failure of the trial judge to instruct the jury on facilitation of first-degree murder and solicitation of first-degree murder. A trial judge has a mandatory duty to instruct the jury on all lesser grades and lesser

included offenses of the offense charged which are supported by the evidence. State v. Trusty, 919 S.W.2d 305, 311 (Tenn. 1996). A criminal defendant has the right to a correct and complete charge of the law given to the jury by the trial judge. State v. Stephenson, 878 S.W.2d 530, 555 (Tenn. 1994) (citing State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990)); State v. Bryant, 654 S.W.2d 389, 390 (Tenn. 1983)).

An offense is a lesser grade of a charged offense if it is classified along with the charged offense in the statutory section outlining the charged offense. Trusty, 919 S.W.2d at 310. For instance, in Tennessee Code Annotated Sections 39-13-201 through 213, the legislature has divided criminal homicide into the grades of first-degree murder, second-degree murder, voluntary manslaughter, criminally negligent homicide, and vehicular homicide. Thus, one can immediately determine whether an offense is a lesser grade by looking at the statutes. An offense qualifies as a lesser included offense if the elements of the included offense are a subset of the elements of the charged offense and only if the greater offense cannot be committed without also committing the lesser offense. Trusty, 919 S.W.2d at 310 (citing Schmuck v. United States, 109 S. Ct. 1443, 1450-51 (1989)).

Appellant was charged with and found guilty of criminal responsibility for the conduct of another in the commission of first-degree murder pursuant to Tennessee Code Annotated Section 39-11-402 (1991). Under that section, a defendant is criminally responsible for the conduct of another if, "[a]cting with intent to promote or assist the commission of the offense, or to benefit in the proceeds or results of the offense, the person solicits, directs, aids, or attempts

to aid another person to commit the offense . . . ." Tenn. Code Ann. § 39-11-402(2).  Tennessee Code Annotated Section 39-11-403 provides that a person is criminally responsible for the facilitation of a felony if, "knowing that another intends to commit a specific felony, but without the intent required for criminal responsibility under § 39-11-402(2), the person knowingly furnishes substantial assistance in the commission of the felony."

The Sentencing Commission Comments to Section 39-11-403 and State v. Lewis, 919 S.W.2d 62, 67 (Tenn. Crim. App. 1995), indicate criminal responsibility for the facilitation of a felony is properly understood as a lesser included offense of a completed offense where the conviction is based upon the criminal responsibility for conduct of another.  The Sentencing Commission Comments state that "[t]his section recognizes a lesser degree of criminal responsibility than that of a party under § 39-11-401 . . . . A defendant charged as a party may be found guilty of facilitation as a lesser included offense if the defendant's degree of complicity is insufficient to warrant conviction as a party." In Lewis, we concluded that "virtually every time one is charged with a felony by way of criminal responsibility for the conduct of another, facilitation of the felony would be a lesser included offense."  919 S.W.2d at 67.

Here, however, facilitation of murder was not fairly raised by any proof submitted at trial and there is therefore no duty to instruct the jury with respect to it.  Trusty, 919 S.W.2d at 311.  According to the State, Licari and Spadafina murdered Burns at the direction of Appellant and in exchange for $10,000. Although she did not wield the murder weapon, evidence was presented that she directed the murder and intended to benefit by it.  On the other hand, Appellant

denied any involvement at all in Burns' death. Therefore, we find that it was not erroneous for the trial court to fail to instruct the jury on the lesser included offense of facilitation.

Pursuant to Tennessee Code Annotated Section 39-12-102(a), a person is guilty of the offense of solicitation when that person: "by means of oral, written or electronic communication, directly or through another, intentionally commands, requests or hires another to commit a criminal offense, or attempts to command, request or hire another to commit a criminal offense, with the intent that the criminal offense be committed . . . ." Ordinarily solicitation of first-degree murder is neither a lesser included offense nor a lesser grade of first degree murder. Certainly it cannot be said that one can be found guilty of first-degree murder through criminal responsibility for the conduct of another only if there is solicitation of murder. Further, solicitation of first degree murder is not a lesser grade of first-degree murder since it is not part of the statutory scheme criminalizing homicide and it is not codified in proximity to first-degree murder. This however does not end our inquiry.

In the case of Howard v. State, 578 S.W.2d 83,85 (Tenn. 1979); the Tennessee Supreme Court held that for jury instruction purposes, a lesser included offense is determined in the context of the greater offense as the greater offense is charged in the indictment. In the instant case, the indictment provides that Appellant's criminal responsibility is premised upon her allegedly having solicited Licari and Spadafina to murder the victim. As the charge of criminal responsibility is alleged in this particular indictment it includes the crime of solicitation as a lesser included offense. However, since there is no evidence to

raise a doubt about the fact that the homicide was first degree murder, the offense of solicitation would merge with the completed crime. <u>See</u> Tenn. Code Ann. Sec. 39-12-102, Sentencing Commission Comments. Thus, Appellant was not entitled to a jury instruction regarding solicitation as a lesser included offense.

### III. Cross-Examination of Licari

Next Appellant takes issue with the trial court's limitation of defense counsel's cross-examination of Licari. At trial, during the cross-examination of Licari, defense counsel attempted to question Licari about several threatening letters he sent to Spadafina while they were incarcerated. In those letters, Licari stated in very offensive terms that he planned to kill Spadafina for "snitching" on him. A segment of one of the letters reads as follows:

> [b]eing a snitch and getting revenge is a big difference. You and me know the real deal so I got my revenge after you set me up. How does it feel to know that you will never see the street again? Your bitch girlfriend is the talk of Camden. It seems Tommy isn't the only one fucking her . . . .

The trial judge allowed questioning concerning the letters under Tennessee Rule of Evidence 608(b) which permits the credibility of a witness to be attacked with character evidence in the form specific instances of conduct. However, when defense counsel began asking Licari what he meant by certain statements such as "Ass-hole, when I catch up to you we will see how tough you are," the State objected. Defense counsel was allowed to continue, but the letters were not put before the jury.

The propriety, scope, manner, and control of the examination of witnesses is a matter within the sound discretion of the trial judge. State v. Meeks, 876 S.W.2d 121, 128 (Tenn. Crim. App. 1993). Such discretion will not be interfered with absent a showing of abuse.

Appellant emphasizes in her brief that Licari's letters were admissible under Tennessee Rule of Evidence 608 for the purpose of attacking Licari's credibility. However, Rule 608(b) states that extrinsic evidence may not be used to prove specific acts. Appellant also argues that the letters are admissible to prove prejudice or bias. Tennessee Rule of Evidence 616 permits impeachment with extrinsic evidence to demonstrate a witness' bias or prejudice. Thus, these threatening letters were admissible to attack Licari's credibility. Although Licari had been impeached through his criminal record and his admitted desire for revenge, the letters express Licari's anger, ill motive, and viciousness in graphic terms. Given the closeness of this case and the overwhelming importance of Licari's testimony to the prosecution's case, we believe the exclusion of the letters constitutes error. Upon retrial of this cause Appellant should be allowed greater leeway in the use of these letters to cross-examine Licari.

## IV. Newly Discovered Evidence and Ineffective Assistance of Counsel.

In her fourth issue, Appellant contends that information contained in two affidavits entitle her to a new trial either because it constitutes newly discovered evidence or, in the alternative, her trial counsel was constitutionally defective in failing to pursue the information. The first affidavit contains a statement taken from a woman named Ruby Blankenship. In her statement and at the hearing on Appellant's motion for new trial, she stated that she worked for Burns and Burns'

son, Paul Frappola, as a housekeeper. She claimes that she overheard a conversation where Frappola said that he brought Spadafina to Tennessee to kill burns. She also claimed she heard Frappola tell Spadafina to "go ahead and kill him." The second affidavit was taken from Cathy Sue Decker, Ruby Blankenship's mother. In it, Ms. Decker stated that she overheard Frappola say "we got to whack this old man," and we have to "get rid of Paul Burns." The trial court found that this evidence was not newly discovered and that trial counsel's failure to call these two witnesses did not constitute ineffective assistance of counsel.

To justify a new trial based on newly discovered evidence, the defendant must show that the evidence could not have been discovered with reasonable diligence, the evidence was material, and the evidence was likely to change the result of the trial if accepted by the jury. State v. Goswick, 656 S.W.2d 355, 358-59 (Tenn. 1983). The evidence contained in the Blankenship and Decker affidavits was not newly discovered. During pretrial discovery, trial counsel received a copy of an interview of an investigator Smith with the Camden police department, taken by the Tennessee Bureau of Investigation. It showed that Mr. Smith had interviewed Ms. Decker who had called the police months before Burns died because she was concerned for his safety. Another document contained an interview of Ms. Decker. It stated that she had heard Frappola and Spadafina talking about "whacking Paul Burns."

We do however find that trial counsel's failure to interview these two potential defense witnesses and to present their testimony to the jury deprived Appellant of the effective assistance of counsel. When an appeal challenges the

sixth Amendment right to effective assistance of counsel, the appellant has the burden of establishing that the advice given or services rendered by the attorney fell below the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930 (Tenn. 1975). Under Strickland v. Washington, 466 U.S. 668, 687 (1984), there is a two-prong test which places the burden on the appellant to show that (1) the representation was deficient, requiring a showing that counsel made errors so serious that he or she was not functioning as "counsel" as guaranteed a defendant by the Sixth Amendment, and (2) the deficient representation prejudiced the defense to the point of depriving the appellant of a fair trial with a reliable result. Prejudice is shown by demonstrating a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id. at 694. Under the Strickland test, a reviewing court's scrutiny "must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence . . . ." Id. at 689. In fact, a petitioner challenging his counsel's representation faces a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistant . . . ." Id. at 689.

As noted above, at the hearing on the motion for a new trial, trial counsel testified that during discovery he received a copy of a Tennessee Bureau of Investigation memorandum referencing Ms. Decker's statement that she had heard Frappola threaten the victim. The memorandum also states that Ms. Decker's daughter, Ms. Blankenship, developed a short, romantic relationship with Frappola. Finally, the memorandum indicates that Ms. Blankenship has criminal charges against her and would be willing to exchange information for some type of "deal." Trial counsel testified that he did not interview Ms. Decker

because her statements did not exclude Appellant as a suspect. He explained that his failure to interview Ms. Blankenship was because there was no statement by her in the T.B.I. material. Trial counsel admitted that when, at the behest of Appellant's current attorney, Ms. Decker and Ms. Blankenship were interviewed in preparation for the new trial hearing, the affidavits they provided consisted of proof tending to show that Paul Frappola rather than Appellant procured the murder of Mr. Burns. Counsel stated that had he had this information prior to trial he would certainly have used it in his defense of Appellant.

In State v. Harbison, 704 S.W.2d 314, 319 (Tenn. 1986), our Supreme Court stated:

> Defense counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. A particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Even in light of the above-quoted standard of review in cases such as this, we are compelled to conclude that the decision not to pursue interviews with Ms. Decker and Ms. Blankenship was not reasonable when assessed in connection with the facts of this case.

Trial counsel knew or should have known that four (4) months before Appellant's trial Spadafina had been convicted of first degree murder for his participation in the murder of Paul Burns. See State v. Spadafina, No. 02C01-9601-CC-00001, 1997 WL 1239 (Tenn. Crim. App. Jan. 2, 1997). He also knew that Vito Licari had pled guilty to the murder charge against him and that Licari would testify against Appellant. The State's theory of the case was that

-15-

Spadafina and Licari had been hired by Appellant to kill Mr. Burns. The State's case rested almost entirely on the testimony of Licari who testified out of revenge and pursuant to a plea bargain. Although Licari's testimony is sufficiently corroborated under the accomplice corroboration rule, the corroborative testimony is not great, nor would it, standing alone, be sufficient to convict Appellant of murder. Trial counsel had also received during discovery T.B.I. materials indicating that Ms. Decker had both seen and heard threats by Frappola and that Ms. Blankenship might have information to exchange in return for a "deal" on her own criminal charges. Given Licari's reprehensible background and the relative paucity of evidence other than his testimony that Appellant procured the murder of Burns, evidence that Mr. Frappola had a motive and a stated desire to kill or have Spadafina kill Burns would have been a powerful tool in raising a reasonable doubt as to Appellant's alleged participation in the crime. Indeed, trial counsel admitted that had he developed the information contained in the affidavit of Ms. Decker and Ms. Blankenship prior to Appellant's trial, he would have used that information in her defense. We do not typically judge counsel's decisions in hindsight; however, we cannot conceive, based on the record before us, why counsel would not have developed information such as this and used it at trial. We must therefore conclude counsel's failure in this regard is not reasonable.

In addition we believe Appellant has demonstrated a reasonable probability that the result of the trial would have been different had evidence of Frappola's threats been put before they jury. It must be kept in mind that the defense in a criminal case need only raise a reasonable doubt in the mind of the jury in order to avoid a conviction. Given that the State's case against Appellant rested almost

entirely on the disreputable figure of Vito Licari, that many of the players in this drama come from the organized crime milieu, and that the deceased was involved in fraudulent schemes at the time of his murder, we believe showing that a person other than Appellant had motive and expressed the desire to kill the victim might very well have created a reasonable doubt as to Appellant's guilt.

We therefore reverse this case due to our conclusion that Appellant was denied the effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Constitution of Tennessee. In view of our holding, it is unnecessary to address the claim that cumulative errors deprived Appellant of due process of law. This case is remanded to the trial court for a new trial.

_____
JERRY L. SMITH, JUDGE


CONCUR:


_____
JOE B. JONES, PRESIDING JUDGE


_____
JOSEPH M. TIPTON, JUDGE