IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
April 14, 2009 Session

**STATE OF TENNESSEE v. JERION CRAFT**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 06-01957      W. Mark Ward, Judge**

**No. W2008-00869-CCA-R3-CD   -   Filed August 27, 2009**

The defendant, Jerion Craft, was convicted of separate counts of unlawful possession of cocaine with intent to sell and to deliver. The trial court merged the convictions and sentenced the defendant to serve eleven years as a standard offender. On appeal, the defendant contends that the evidence was insufficient to demonstrate that: he possessed cocaine with the intent to distribute it; the trial court interfered with his right to a fair trial; and the trial court erred in failing to declare a mistrial. After careful review, we affirm the judgments from the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which ALAN E. GLENN and J.C. MCLIN, JJ., joined.

Jake Erwin (on appeal), and William Gosnell (at trial), Memphis, Tennessee, for the appellant, Jerion Craft.

Robert E. Cooper, Jr., Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; William L. Gibbons, District Attorney General; and Abby Wallace and Summer Morgan, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

This case involves the discovery of cocaine during the execution of a search warrant at the defendant's residence on the morning of September 11, 2005, after an informant reported that the defendant was selling drugs from the residence. During the course of executing the warrant, officers apprehended the defendant as he exited the back door of the residence. In the home, the officers discovered a .32 caliber handgun, a tube used in the fabrication of crack cocaine, two assault rifles, and a "baggie" containing eleven or twelve smaller "baggies" of crack cocaine.

Detective David Boddie testified that members of the Shelby County Sheriff's Department identified the defendant, known as "Juicy," at the resident of 821 Pendleton. Deputy Sheriff Robert Jewel testified that he assisted in the entry and execution of the search warrant and that he discovered

the tube used in the fabrication of crack cocaine and the "baggie" containing cocaine. Deputy Jewel said that the tube, which was found on the kitchen counter, later tested positive for cocaine residue. He testified that the drugs were found under a motorcycle helmet lying on top of the headboard of a bed.

Detective John Rada, of the Sheriff's Narcotics Division, testified that he was part of the search warrant team that entered the home at 821 Pendleton. He recovered two assault rifles from under a bed.

Detective Charles Allen was the chief detective on the team that executed the search warrant. He said that they knocked on the door, announced their presence, and then noticed three men in a window. Two of the men appeared to flee to the rear of the house, and the detective identified the defendant as one of those men. The search warrant was served on the defendant after the informant had identified the defendant from a photo lineup and called the defendant by both his first name and "Juicy."

When the defendant was questioned, he acknowledged that he owned the residence and indicated that the bedroom where the drugs were found was his room. Further, he claimed ownership of the guns but not the drugs. The other two men said that they did not reside in the home. The defendant further acknowledged that he went by the name "Juicy." The detective testified that the two loaded rifles and the drugs were found in the northeast bedroom of the residence. The detective also recovered a digital scale from the coffee table in the residence's living area. The crack cocaine, which appeared "freshly cooked and packaged for sale," was sent to the Tennessee Bureau of Investigation (T.B.I.) for testing.

A T.B.I. special agent forensic scientist with the Memphis Crime Laboratory testified that she received the evidence recovered from the defendant's residence. She weighed it and tested it for the presence of cocaine. She testified that it was 55.5 grams of crack cocaine.

At trial, the defendant denied that he had ever gone by the name "Juicy." He also denied that the drugs belonged to him. He further denied living at 821 Pendleton but acknowledged that he shared the rent obligation with the other two men who were arrested. He called the residence a "gambling house." He said that he only stayed there when he was too drunk to drive home, but he acknowledged that he spent the night at the residence on September 10, 2005. He claimed that he purchased the assault rifles during a crap game that night and that one of the other men placed them under the bed. The defendant testified that he did not own a motorcycle at the time of his arrest but admitted that he was cited for riding a motorcycle without a helmet earlier that summer. He denied any knowledge of the handgun or the crack cocaine.

Following trial, the defendant was convicted of possession of crack cocaine with the intent to sell and with possession of crack cocaine with the intent to deliver, as charged in the indictments. He was sentenced to eleven years as a Range I, standard offender.

Analysis

On appeal, the defendant argues that the evidence was insufficient to show that he possessed a controlled substance with the intent to distribute. Specifically, he contends that no "real" proof was offered to show that he owned the residence at 821 Pendleton.

When an accused challenges the sufficiency of the evidence, this court must review the record to determine if the evidence adduced during the trial was sufficient "to support the finding by the trier of fact of guilt beyond a reasonable doubt." Tenn. R. App. P. 13(e). This rule is applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. *State v. Brewer*, 932 S.W.2d 1, 18 (Tenn. Crim. App. 1996).

In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Nor may this court substitute its inferences for those drawn by the trier of fact from circumstantial evidence. *Liakas v. State*, 199 Tenn. 298, 305, 286 S.W.2d 856, 859 (1956). To the contrary, this court is required to afford the State the strongest legitimate view of the evidence contained in the record, as well as all reasonable and legitimate inferences which may be drawn from the evidence. State v. Elkins, 102 S.W.3d 578, 581 (Tenn. 2003).

The trier of fact, not this court, resolves questions concerning the credibility of the witnesses, the weight and value to be given the evidence, as well as all factual issues raised by the evidence. *Id.* In *State v. Grace*, the Tennessee Supreme Court stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." 493 S.W.2d 474, 476 (Tenn. 1973). Because a verdict of guilt removes the presumption of innocence and replaces it with a presumption of guilt, the accused has the burden in this court of illustrating why the evidence is insufficient to support the verdict returned by the trier of fact. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982); *Grace*, 493 S.W.2d at 476.

Here, the State was required to show that the defendant knowingly possessed more than 0.5 grams of cocaine with the intent to sell or deliver. T.C.A. § 39-17-417(a)(4), (c)(1) (2006). Possession in such a case may be actual or constructive and can be shown by circumstantial evidence. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Notably, drugs or drug paraphernalia may be possessed solely or jointly with others. *State v. Copeland*, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Although a conviction may be based solely upon circumstantial evidence, the circumstantial evidence must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant. *State v. Crawford*, 225 Tenn. 478, 470 S.W.2d 610, 612 (Tenn. 1971); *see also State v. Jones*, 901 S.W.2d 393, 396 (Tenn. Crim. App. 1995).

Constructive possession is demonstrated by showing that a person had the power and intention at a given time to exercise dominion and control over the drugs or drug paraphernalia either directly or through others. *Shaw*, 37 S.W.3d at 903. In essence, constructive possession is the ability to reduce the contraband to actual possession. *State v. Williams*, 623 S.W.2d 121, 125 (Tenn. Crim. App. 1981). However, one's mere presence in an area where drugs are discovered or one's mere

association with a person who is in possession of drugs is not sufficient to support a finding of constructive possession. *Shaw*, 37 S.W.3d at 903 (*citing State v. Patterson*, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)).

The intention to sell or deliver drugs may be inferred from the amount of the drug possessed by the accused, along with other relevant facts surrounding the arrest. T.C.A. § 39-17-419 (2006); *see also State v. Cedric P. Golden*, No. W2005-02743-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 615, at **9-11 (Tenn. Crim. App. at Jackson, Aug. 4, 2006); *State v. John Fitzgerald Belew*, No. W2004-01456-CCA-R3-CD, 2005 Tenn. Crim. App. LEXIS 360, at *15 (Tenn. Crim. App., at Jackson, Apr. 18, 2005) (determining that a jury can infer intent to sell or deliver when amount of controlled substance and other relevant facts surrounding arrest are considered together). The amount of cocaine and the manner in which it was packaged may also support an inference of intent to sell. *State v. Brown*, 915 S.W.2d 3, 8 (Tenn. Crim. App. 1995).

The testimony at trial revealed that the defendant was selling crack cocaine from a residence at 821 Pendleton. Detective Boddie was part of a team that executed a search warrant based on a confidential informant's tip that the defendant sold him crack cocaine from that residence. The drugs seized under the search warrant were packaged in eleven separate "baggies" inside a larger "baggie." Testing revealed that the "baggies" contained a total of 55.5 grams of crack cocaine. The crack cocaine was discovered on the bed where the defendant slept the previous night. There were two rifles discovered under the same bed, and the defendant told police he acquired the guns the previous night. Further, the defendant acknowledged that he shared the rent payment for the residence. In the past, we have affirmed convictions where the amount of the controlled substance was greater than .5 grams and where there existed physical or testimonial evidence which allowed the jury to draw a permissible inference from the facts surrounding the arrest that the defendant had intent to sell or deliver. *See State v. Chearis*, 995 S.W.2d 641, 645 (Tenn. Crim. App. 1999). Further, because the crack cocaine was packaged into eleven smaller "baggies," it was permissible for the jury to infer that the drugs were possessed with the intent to sell. The evidence presented at trial was sufficient for a reasonable juror to determine that the defendant possessed the drugs with the intent to sell or deliver them.

Next, the defendant argues that the trial court interfered with his right to a fair trial by stating that the defendant would be unable to be retried for approximately six months when he mentioned filing a motion to declare a mistrial. The defendant contends that the trial court attempted to persuade him not to pursue a mistrial with the threat of waiting in jail for an additional six months before he could have another jury trial. The defendant consulted with trial counsel and ultimately decided not to pursue the motion for a mistrial. The defendant did not raise this issue in his motion for new trial. In the absence of plain error, a defendant, as a general rule, cannot succeed on an issue raised for the first time on appeal. *See* Tenn. R. App. P. 36; *see also State v. Adkisson*, 899 S.W.2d 626, 636 (Tenn. Crim. App. 1994). To exercise plain error review, all five factors of the "clear and meaningful standard," as adopted by this court in *Adkisson*, must be satisfied. *See State v. Schiefelbein*, 230 S.W.3d 88, 119 (Tenn. Crim. App. 2007). The five factors under the "clear and meaningful standard" in *Adkisson* are:

1) The record must clearly establish what occurred in the trial court;
2) A clear and unequivocal rule of law must have been breached;
3) A substantial right of the accused must have been adversely affected;
4) The accused did not waive the issue for tactical reasons; and
5) Consideration of the error is necessary to do substantial justice.

*Adkisson*, 899 S.W.2d at 641-42.

The defendant concedes that "case law on this exact point is sparse if not nonexistent." If no such "clear and unequivocal" rule of law exists, the defendant cannot satisfy the second factor of the test for plain error as set out in *Adkisson*. Further, the record is clear that the defendant made a choice to waive the issue for tactical reasons because he did not want to be incarcerated while he waited for a new jury panel. Therefore, this issue is waived because it was not raised previously and is not proper for plain error review.

Next, the defendant argues that the trial court erred in not declaring a mistrial after two jurors made prejudicial comments about the defendant in the presence of other jurors. However, the defendant withdrew his motion for a mistrial before the trial court made a ruling. The defendant's abandonment of his request for a mistrial operates as a failure on his part to nullify the effect of the error, if any, to otherwise raise this issue below or to demonstrate prejudice which precludes reversal on this ground. *See* Tenn. R. App. P. 36 (a); *see also State v. Art Mayse*, No. M2004-03077-CCA-R3-CD, 2006 Tenn. Crim. App. LEXIS 353, at **30-31 (Tenn. Crim. App. at Nashville, Apr. 27, 2006), *perm. to appeal denied* (Tenn. Oct. 9, 2006).

Conclusion

Based on the foregoing and the record as a whole, we affirm the judgments from the trial court.

_____
JOHN EVERETT WILLIAMS, JUDGE