IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 6, 2009

## STATE OF TENNESSEE v. DELAWRENCE WILLIAMS

**Direct Appeal from the Circuit Court for Dyer County**
**No. C03-405    R. Lee Moore, Jr., Judge**

**No. W2009-00748-CCA-R3-CD  -  Filed November 10, 2009**

The defendant, Delawrence Williams, was convicted by a Dyer County jury of possession of .5 grams or more of cocaine with the intent to deliver or sell, a Class B felony, and assault, a Class A misdemeanor. He was subsequently sentenced by the trial court to fourteen years for the drug possession offense and eleven months, twenty-nine days for the assault offense, with the sentences to be served concurrently to each other and concurrently to his sentence in a federal case but consecutively to his sentence in another Dyer County case. The sole issue the defendant raises in this appeal is whether the evidence was sufficient to sustain the convictions. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Charles M. Agee, Jr., Dyersburg, Tennessee, for the appellant, Delawrence Williams.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; and C. Phillip Bivens, District Attorney General, for the appellee, State of Tennessee.

### OPINION

### FACTS

On December 8, 2003, a Dyer County Grand Jury indicted the defendant for the September 28, 2003, aggravated assault of Vivial Taylor and the possession of .5 grams or more of cocaine with the intent to deliver or sell. The defendant stipulated at his October 2007 trial that the residence and the bedroom in which the contraband was found was his. The State's first witness, Vivial Taylor, testified that on September 28, 2003, she and the defendant, who were in a relationship, got into an argument at his house trailer, located at 440 Bean Mill Road in Dyer County. As she was leaving, she tried to run him over with her car and then struck his car with her vehicle. She was in the process of striking his car again when the defendant hit her windshield with a swing blade. Taylor

testified that she was frightened of the defendant during the entire episode and that both she and the defendant were arrested as a result of the incident.

On cross-examination, Taylor testified that the argument began when the defendant told her in a telephone conversation that he had given money to an ex-girlfriend. She said that when the defendant came home he asked her to leave, but she refused. She stated that their verbal altercation escalated into a physical fight when her cell phone rang and the defendant attempted to grab it from her. As she and the defendant wrestled over the phone, the defendant threw her into the kitchen cabinets and she attempted to cut him with a knife. The defendant then pushed her outside the house and onto the porch. At that point, she jumped into her car and tried to run him over, but "he kept hopping out [of] the way, so [she] went down beside of his Cadillac with" her Honda Accord.

Taylor testified that she had dated the defendant for approximately two or three years prior to the incident and had regularly spent four or five nights a week with him at his home. She acknowledged that three other men were living with the defendant at that time: "Melvin Cates," "Keith," and "Powell."

Sergeant Kenny Gibbons of the Dyer County Sheriff's Department testified that he was dispatched to the defendant's residence on September 28, 2003, in response to an unknown disturbance call. The defendant and Taylor were present when he arrived and, after investigating, he arrested both of them on charges of aggravated assault. During the course of his investigation, he went into the home and saw a cigar containing suspected marijuana and a napkin with white residue and a razor blade beside it. As a result, he contacted Investigator McCreight, who obtained a search warrant for the residence. Sergeant Gibbons testified that two other individuals were inside the residence at the time he entered: Marvin Cates and Constance Belk.

Officer Lynn Waller of the Dyersburg Police Department, who was formerly employed with the Dyer County Sheriff's Department and participated in the search of the defendant's residence, identified and described photographs of various items located during the search, including: a marijuana blunt cigar, a paper towel with what appeared to be crack cocaine, and a razor blade with white residue, all of which were found on the dresser in the defendant's bedroom; five clear plastic bags with approximately one ounce of powder cocaine in each, which were found in a brown paper bag in the pocket of a jacket hanging in the closet of the defendant's bedroom; and several bundles of cash, which were found in various locations in the same closet.

Officer Waller, who stated that he had handled between 50 and 100 drug cases during his nine years in law enforcement, estimated that the value of the powder cocaine found at the residence was between seven and eight thousand dollars. He recalled that there were two other individuals in the residence at the time he entered: a male named Cates and a female named Belk. On cross-examination, he stated that Cates informed him that he had been staying for a few days in the front room and that the defendant lived in the back part of the trailer. To Officer Waller's knowledge, no one else lived in the trailer with the defendant. He acknowledged, however, that in the year preceding the defendant's trial, two men named "Keith" and "Powell" had been arrested and charged with drug offenses "operating out of" the same trailer.

Chad Barron, formerly employed as a patrol sergeant and dog handler with the Dyer County Sheriff's Department, testified that on September 28, 2003, he and his drug dog, "Mako," participated in the search of the defendant's residence. He said that Mako led him to the defendant's bedroom and to the closet in which the powder cocaine and bundles of cash were discovered but exhibited no reaction to any other rooms in the residence.

Investigator Terry McCreight of the Dyer County Sheriff's Department identified the inventory of items found at the residence and described where each was found. According to his testimony, all of the items, with the exception of the ones previously described that were found on the dresser, were located in the closet of the defendant's bedroom. These included: $2135 in cash found on a top shelf; the five plastic bags of white powder, which were found in a brown paper bag inside a jacket; $441 in cash found in the right pocket of a pair of jeans; the defendant's driver's license and $680 in cash, both found in the left rear pocket of the same pair of jeans; $425 in cash found in the left front pocket of the same pair of jeans; $900 in cash found in the inside breast pocket of a gray jacket; and $20 in cash found in a gray and white hooded jacket. Investigator McCreight acknowledged on cross-examination that a man named "Keith" and a man named "Powell" had both been recently arrested for selling drugs out of the same residence. He did not know, however, whether either of them was staying in the trailer at the time of the defendant's 2003 arrest.

Special Agent Forensic Scientist Dana Parmenter of the Tennessee Bureau of Investigation Crime Laboratory, an expert in the identification of controlled substances, testified that she analyzed the substances submitted in connection with the case and determined that they consisted of .5 grams of cocaine base, or crack cocaine, and 130.9 grams, or 4.6 ounces, of powder cocaine.

Vivial Taylor, recalled as a witness for the defense, repeated her earlier testimony that three men lived with the defendant at his trailer at the time of the 2003 incident: "Keith Henning," "Powell," and "Mervin [sic] Cates."

The defendant testified that the marijuana and the money found in the blue jeans were his, but he denied ownership of the crack and powder cocaine and the blue jean jacket. He also denied that he ever struck or threatened Taylor. He admitted, however, that he shoved her out his bedroom door as he was trying to get her to leave his house. He stated that she reacted by grabbing a kitchen knife and chasing him around the house with it, but that things had calmed down between them by the time she left the house. Consequently, he was surprised when, as he was carrying the trash outside, she began trying to run him down with her vehicle. The defendant testified that Taylor drove her vehicle into his Cadillac, and was preparing to do so again, when he moved in front of the vehicle. He explained that he did not believe she would really run him down and thought that he could stop her from further damaging his car by standing in front of it. Taylor, however, kept coming, and he therefore jumped on top of her car and struck her windshield with a tire tool that was lying on the ground.

The defendant further testified that Cates, Powell, and Keith regularly stayed at his home and that he sometimes returned home early in the morning to find Cates asleep in his bed. In addition, Cates kept some of his clothes in his closet. On cross-examination, the defendant testified that he had seen cocaine before but did not know how much .5 grams of crack cocaine would cost. He

acknowledged, however, that he had been convicted of the sale of .5 grams or more of cocaine less than one month prior to the September 30, 2003, incident.

Following deliberations, the jury convicted the defendant of the lesser-included offense of simple assault and of the indicted offense of possession of .5 grams or more of cocaine with the intent to deliver or sell.

## ANALYSIS

### Sufficiency of the Evidence

The sole issue the defendant raises on appeal is whether the evidence was sufficient to sustain his convictions. In considering this issue, we apply the rule that where sufficiency of the convicting evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). The same standard applies whether the finding of guilt is predicated upon direct evidence, circumstantial evidence, or a combination of direct and circumstantial evidence. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 219 Tenn. 4, 11, 405 S.W.2d 768, 771 (1966) (citing Carroll v. State, 212 Tenn. 464, 370 S.W.2d 523 (1963)).

A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

## A. Assault

To sustain the conviction for assault, the State had to show beyond a reasonable doubt that the defendant intentionally or knowingly caused Taylor to reasonably fear imminent bodily injury. See Tenn. Code Ann. § 39-13-101(a)(2) (2003 & 2006). Taylor testified that the defendant struck the windshield of the car she was driving with a swing blade, which caused her to feel fear. The defendant denied that he used a swing blade but admitted that he struck the windshield of the car with a tire tool. Viewed in the light most favorable to the State, this evidence was sufficient for the jury to find the defendant guilty of intentionally or knowingly causing Taylor to reasonably fear imminent bodily injury. We conclude, therefore, that the evidence was sufficient to sustain the defendant's conviction for assault.

## B. Possession of .5 grams or more of Cocaine with Intent

To sustain the conviction for possession of .5 grams or more of cocaine with the intent to deliver or sell, the State had to show beyond a reasonable doubt that the defendant knowingly possessed .5 grams or more of cocaine with the intent to deliver or sell it. Tenn. Code Ann. § 39-17-417(a)(4), (b)(1) (2003 & 2006). Tennessee Code Annotated section 39-17-419 provides in pertinent part: "It may be inferred from the amount of a controlled substance or substances possessed by an offender, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or otherwise dispensing."

Possession of drugs and drug paraphernalia may be constructive as well as actual. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984) (citation omitted). An individual's mere presence in an area in which drugs are found, or association with another individual in possession of drugs, is not, alone, sufficient to establish constructive possession. Shaw, 37 S.W.3d at 903 (citing State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997); Cooper, 736 S.W.2d at 129). However, possession of the premises in which contraband is found creates an inference that the possessor had possession of the contraband. See Transou, 928 S.W.2d at 956; Armstrong v. State, 548 S.W.2d 334, 336 (Tenn. Crim. App. 1976).

On appeal, the defendant argues that the circumstantial evidence was insufficient to establish that the cocaine found in the residence was his. In support, he cites, among other things, the fact that no drugs were found on his person and that the proof showed that he shared his home at the time with several other men who had access to his bedroom, including two who were later arrested for drug offenses. The jurors, however, heard the testimony with respect to the other men who shared the home and their later arrests for drug offenses, yet nonetheless convicted the defendant of the indicted offense. By their verdict, they obviously chose not to accredit the defendant's denial of ownership of the drugs. Credibility determinations are within the province of the jury, and we will not disturb those determinations on appeal. See Pappas, 754 S.W.2d at 623. The proof at trial

established that a large amount of powder cocaine, which had a street value of $7000 to $8000, was found prepackaged in separate plastic bags inside a brown paper bag in a jacket hanging in the defendant's bedroom closet. Large amounts of cash were found in various locations in the closet, as well as the defendant's driver's license. This evidence, viewed in the light most favorable to the State, was sufficient for a jury to infer that the cocaine belonged to the defendant and that he possessed it with the intent to deliver or sell it. We conclude, therefore, that the evidence was sufficient to sustain the conviction.

## CONCLUSION

Based on our review, we conclude that the evidence was sufficient to sustain the defendant's convictions for assault and possession of .5 grams or more of cocaine with the intent to deliver or sell. Accordingly, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE