# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
Assigned on Briefs June 12, 2012

## STATE OF TENNESSEE v. ANTHONY LAREN TWEEDY, II

**Appeal from the Circuit Court of Madison County**
**No. 10-757    Donald H. Allen, Judge**

---

**No. W2011-02373-CCA-R3-CD  - Filed July 13, 2012**

---

Anthony Laren Tweedy, II ("the Defendant") was convicted of initiation of a process to manufacture methamphetamine, manufacture of methamphetamine, felony possession of drug paraphernalia, and possession of marijuana. On appeal, the Defendant requests that this Court, under a plain error review, dismiss his conviction for manufacture of methamphetamine. He also asserts that the evidence presented at trial was insufficient to support his convictions for initiation of a process to manufacture methamphetamine, manufacture of methamphetamine, and felony possession of drug paraphernalia. The Defendant does not appeal his conviction for possession of marijuana. After a thorough review of the record and the applicable law, we affirm the Defendant's conviction for initiation of a process to manufacture methamphetamine. We also reduce his conviction from felony to misdemeanor possession of drug paraphernalia and affirm as modified. However, we reverse and dismiss the Defendant's conviction for manufacture of methamphetamine.

### Tenn. R. App. P. 3 Appeal as of Right; Judgments of the
### Circuit Court Affirmed as Modified in Part and
### Reversed and Dismissed in Part

JEFFREY S. BIVINS, J., delivered the opinion of the Court, in which ROBERT W. WEDEMEYER and ROGER A. PAGE, JJ., joined.

Gregory D. Gookin, Jackson, Tennessee, for the appellant, Anthony Laren Tweedy, II.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel E. Willis, Senior Counsel; James G. Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

A Madison County Grand Jury indicted the Defendant and Danny E. Hinson, his co-defendant, for initiation of a process to manufacture methamphetamine, manufacture of methamphetamine, and felony possession of drug paraphernalia. Additionally, the grand jury indicted solely the Defendant for possession of marijuana.[1]

### *Proof at Trial*

Sergeant Chris Long testified as an officer in the narcotics division of the Madison County Sheriff's Department. While at work on May 26, 2010, he received a call from John Andy Matthews, a citizen whom he knew personally, informing him that the Defendant and Hinson ("the defendants") had arrived at 4188 Riverside Drive and were walking into the woods to "start cooking some meth." Police officers arrived at the reported residence and asked the occupants of the house for permission to search the premises. Upon receiving permission, the officers began searching the premises, and their search led them to the woods on the south side of the residence. While walking down a well-traveled path, they encountered the defendants. The defendants had "numerous bags and duffle bags" with them. When the officers asked the defendants what they were doing, "they looked at one another and looked back . . . at [Officer Long] and Officer Singleton and then looked at one another again and dropped their heads and stated they were cooking meth." Sergeant Long could not remember who actually stated that they were "cooking meth," but he remembered that one defendant told the other to "go ahead and tell them the truth" and that the other defendant complied. Sergeant Long acknowledged on cross-examination that he may not have included in his report the detail that one defendant told the other to "go ahead and tell them the truth."

After this admission by the defendants, Sergeant Long asked the defendants for permission to search their bags, and the defendants acquiesced. Additionally, the defendants informed the officers that all the materials necessary for manufacturing methamphetamine were in the bags along with several clothing items. Specifically, the defendants admitted to the officers that they had Coleman fuel and Sudafed in the bags. Sergeant Long identified photographs of the items they found at the scene. He also identified two boxes of Wal-phed recovered from among the various items. Lastly, Sergeant Long identified a bag of what he believed to be marijuana that was found on the Defendant's person.

---

[1] The grand jury also indicted solely Hinson for possession of methamphetamine.

Sergeant Dwayne Mathis, Madison County Metro Narcotics Division, testified as an expert in the area of processes for the manufacture of methamphetamine. He explained that methamphetamine can be manufactured in several different ways but that the most common method from his recent observation was the "shake and bake" method. Under the "shake and bake" method, a manufacturer of methamphetamine mixes "lithium, cold medicine like Wal-phed or Sudafed or any of those, some Coleman camp fuel, salt, [and] some ammonia nitrate" in a plastic bottle. Although the ingredients might vary by brand name, all of the above listed ingredients are the essential components in the "shake and bake" process, according to Sergeant Mathis.

He identified from the photographs each of the essential items needed to manufacture methamphetamine. In particular, he noted the Wal-phed boxes and stated that the pseudoephedrine in the pills provided the ephedrine for the final product of methamphetamine. He pointed out crushed pseudoephedrine in a container from one of the photographs, and he explained that crushing up the pseudoephedrine simplified the process. Sergeant Mathis explained that, along with acquiring the other ingredients, crushing the pseudoephedrine pills is one of the initial steps in the process of the manufacture of methamphetamine. He also identified needles, plastic bottles, tubing, a funnel, and a coffee filter from the photographs and explained how each of these items was used either in the manufacture or the consumption of methamphetamine. According to Sergeant Mathis, methamphetamine can be consumed in several different ways, but it appeared to him that the defendants planned to make the methamphetamine into a liquid form for injection.

On cross-examination, Sergeant Mathis acknowledged that the items found at the scene are common household items. However, he also agreed that from his experience he did not find all of those particular items together except for the purpose of manufacturing methamphetamine. Accordingly, he surmised that whoever packed the bags with the various items either intended to manufacture methamphetamine or intended for it to appear that methamphetamine would be manufactured.

Agent David Holloway, a forensic drug chemist with the Tennessee Bureau of Investigation, testified as an expert in the field of drug identification and analysis. Based on tests he performed on one of the substances submitted, he confirmed that the substance obtained from the Defendant's person was, in fact, point seven six (0.76) grams of marijuana.

At the conclusion of the State's proof, the Defendant moved for a judgment of acquittal, and the trial court denied the motion on all counts. The defense then proceeded with its case-in-chief.

Virgie Byrum testified that she knew the defendants because they were friends with her roommates. On the morning of May 26, 2010, the defendants came to her house in order to do laundry. They had a backpack and duffle bag with them. She observed the defendants take all their clothes out of the duffle bag to wash the clothes then return the clothes to the bag once they were dry. She did not observe any chemicals in the bag when the defendants were removing the clothing items. Byrum was not familiar with the residence located at 4188 Riverside Drive. Later in the day, she learned that the defendants had been arrested.

John Andrew Matthews testified that he remembered that the defendants were at his house on several occasions and that he gave them a ride to 4188 Riverside Drive on several occasions. However, he adamantly denied placing any items in the defendants' bags on a day that he drove them to 4188 Riverside Drive. Although Matthews had suffered a severe head injury within the past year that affected his memory, he acknowledged that he knew the defendants. Matthews stated that because of his head injury he had difficulty recalling specific time sequences regarding events.

The Defendant chose not to testify. However, Hinson, his co-defendant, chose to testify at the trial.[2] Although he admitted to using methamphetamine for the past year, Hinson denied ever manufacturing methamphetamine and said that he did not know how to do so. Hinson stated that on the morning of May 26, 2010, he left his mother's house with the Defendant to do laundry at Byrum's house because his mother's washing machine was broken. A friend gave them a ride to Byrum's residence. Hinson had with him large black trash bags of clothes, one small suitcase, and a backpack. The backpack contained items including razors, shampoo, a checkbook, and fingernail clippers. He explained that the defendants were preparing for a work trip to Little Rock, Arkansas. As they were close to finishing their laundry at Byrum's residence, the person who had provided them a ride realized that he could not get his vehicle to start. Matthews, who lived near Byrum, agreed to drive over to get them. Hinson stated that he only had met Matthews the day before this incident.

Once Matthews arrived, the defendants loaded their bags of laundry into his vehicle. According to Hinson, Matthews then said that he needed to return home to inform his wife that he would be driving the Defendants. Matthews then left with most of their laundry in his vehicle. Once the last load of laundry finished, the defendants walked with that bag of clothes to Matthews's home. From there, Matthews drove the defendants to Hinson's mother's home, located at 4188 Riverside Drive. However, instead of taking the defendants directly to the residence, Hinson requested that Matthews drop them off at the end of a gated

---

[2] Hinson testified that he and the Defendant are half-brothers.

road that led to his mother's house. Hinson explained that his mother did not want him to bring strangers to her home, so he did not want Matthews driving up the main road.

When they got out of the car and unloaded their bags, Hinson noticed that there was a bag that he did not recognize. According to Hinson, he asked Matthews about the bag, and Matthews explained that one of the defendants' trash bags ripped while placing it in the trunk. Thus, Matthews replaced the bag with one of his own. Suddenly, Matthews "got in a big hurry to leave. He about ran over [Hinson's] foot twice trying to back up." Approximately five minutes after Matthews left, the defendants encountered Sergeant Long along the path.

Hinson denied giving Sergeant Long permission to search their bags but claimed that Sergeant Long searched them anyway. Hinson also denied that either defendant told Sergeant Long that they were about to start cooking methamphetamine. The defendants had six large, heavy bags with them, including the bag that allegedly belonged to Matthews. Hinson stated that the bag belonging to Matthews was the only bag containing items that could be used to manufacture methamphetamine. He denied noticing a difference in the weight of all the bags of clothes and of the bag that allegedly contained the precursors to methamphetamine.

At the close of proof, the jury deliberated and returned a verdict of guilty for initiation of a process to manufacture methamphetamine, manufacture of methamphetamine, felony possession of drug paraphernalia, and possession of marijuana. The jury imposed fines of $2,500 for initiation of a process to manufacture methamphetamine conviction, $50,000 for the manufacture of methamphetamine conviction,[3] $3,000 for the felony possession of drug paraphernalia conviction, and $250 for the possession of marijuana conviction. The trial court sentenced the Defendant as a standard offender to twelve years for the conviction for the initiation of a process to manufacture methamphetamine. It also sentenced the Defendant as a multiple offender to ten years for the conviction for manufacture of methamphetamine and four years for the conviction for felony possession of drug paraphernalia. Finally, the trial court sentenced the Defendant to eleven months, twenty-nine days on the misdemeanor conviction for possession of marijuana. The trial court ordered that all the sentences run concurrently for an effective sentence of twelve years. The Defendant filed a motion for new trial, which the trial court subsequently denied. He now appeals, requesting that this Court dismiss his manufacture of methamphetamine conviction as a matter of plain error. Additionally, he argues that the evidence is insufficient to support his convictions for

---

[3] We note that the transcript reflects that the jury decided to impose a fine of $50,000 for the manufacture of methamphetamine conviction. However, the judgment entered by the trial court does not include this fine. The other judgment forms contain the fines for the respective convictions.

initiation of a process to manufacture methamphetamine, manufacture of methamphetamine, and felony possession of drug paraphernalia.

## Analysis

*Plain Error*

The Defendant asserts as a matter of plain error that he was improperly convicted of both initiation of a process to manufacture methamphetamine and manufacture of methamphetamine.[4] The doctrine of plain error provides that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." Tenn. R. App. P. 36(b). This Court may find plain error only if all five of the following factors are present: "(1) the record clearly establishes what occurred in the trial court, (2) a clear and unequivocal rule of law was breached, (3) a substantial right of the accused was adversely affected, (4) the accused did not waive the issue for tactical reasons, and (5) consideration of the error is necessary to do substantial justice." State v. Hester, 324 S.W.3d 1, 56 (Tenn. 2010) (citing State v. Gomez, 239 S.W.3d 733, 737 (Tenn. 2007)); see also State v. Adkisson, 899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994). We need not consider all five factors when the record clearly establishes that at least one of the factors is not met. State v. Hatcher, 310 S.W.3d 788, 808 (Tenn. 2010). It is the defendant's burden to persuade this Court that the trial court committed plain error and that the error "was of sufficient magnitude that it probably changed the outcome of the trial." Hester, 324 S.W.3d at 56 (citing State v. Bledsoe, 226 S.W.3d 349, 354-55 (Tenn. 2007)).

The Defendant argues that the State only was permitted to prosecute the Defendant on one or the other of these two charges. The State concedes that this is correct. Indeed, although the Defendant did not raise this issue, the trial court noted when it denied the Defendant's motion for new trial that "perhaps [the two convictions] should merge into one conviction."

Tennessee Code Annotated section 39-17-435 (2006), the section under which the Defendant was convicted for initiation of a process intended to result in the manufacture of methamphetamine, specifically provides that "[a] person may not be prosecuted for a violation of this section and of manufacturing a controlled substance in violation of § 39-17-417 based upon the same set of facts." Id. at § -435(e). Here, the Defendant was prosecuted under both sections 39-17-435 and -417, and the same set of facts established both

---

[4] The Defendant did not raise this issue in his motion for new trial.

convictions. Thus, "the record clearly establishes" that a "clear and unequivocal rule of law was breached." Hester, 324 S.W.3d at 56 (citing Gomez, 239 S.W.3d at 737). As a result, the Defendant received convictions for both initiation of a process to manufacture methamphetamine and manufacture of methamphetamine. The record contains nothing to indicate that the Defendant affirmatively opted not to address this issue in the trial court. Finally, justice requires we correct the error. Thus, all five requirements have been met to satisfy a finding of plain error. The Defendant contends, and the State agrees, that the proper relief afforded the Defendant is to dismiss his conviction for manufacture of methamphetamine. We also agree. Accordingly, we reverse and dismiss the Defendant's conviction for manufacture of methamphetamine.

*Sufficiency of the Evidence*

Our standard of review regarding sufficiency of the evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). See also Tenn. R. App. P. 13(e). After a jury finds a defendant guilty, the presumption of innocence is removed and replaced with a presumption of guilt. State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992). Consequently, the defendant has the burden on appeal of demonstrating why the evidence was insufficient to support the jury's verdict. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

The appellate court does not weigh the evidence anew. Rather, "a jury verdict, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts" in the testimony and all reasonably drawn inferences in favor of the State. State v. Harris, 839 S.W.2d 54, 75 (Tenn. 1992). Thus, "the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom." Id. (citation omitted). This standard of review applies to guilty verdicts based upon direct or circumstantial evidence. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (citing State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). In Dorantes, our Supreme Court adopted the United States Supreme Court's standard that "direct and circumstantial evidence should be treated the same when weighing the sufficiency of such evidence." Id. at 381. Accordingly, the evidence need not exclude every other reasonable hypothesis except that of the defendant's guilt, provided the defendant's guilt is established beyond a reasonable doubt. Id.

The weight and credibility given to the testimony of witnesses, and the reconciliation of conflicts in that testimony, are questions of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Furthermore, it is not the role of this Court to reevaluate the evidence or

substitute its own inferences for those drawn by the jury. State v. Winters, 137 S.W.3d 641, 655 (Tenn. Crim. App. 2003) (citations omitted).

The Defendant contends that the evidence is not sufficient to support his convictions for initiation of a process to manufacture methamphetamine, manufacture of methamphetamine, and felony possession of drug paraphernalia. Because we have dismissed the Defendant's conviction for manufacture of methamphetamine, we only need to address the sufficiency of the evidence as to his convictions for initiation of a process of manufacture methamphetamine and felony possession of drug paraphernalia.

Under Tennessee Code Annotated § 39-17-435, "[i]t is an offense for a person to knowingly initiate a process intended to result in the manufacture of any amount of methamphetamine." "Initiates" is defined in this section as "to begin the extraction of an immediate methamphetamine precursor from a commercial product, to begin the active modification of a commercial product for use in methamphetamine creation, or to heat or combine any substance or substances that can be used in methamphetamine creation." Id. at § -435(c).

At trial, Sergeant Long testified that when he encountered the defendants, "they looked at one another . . . and dropped their heads and stated that they were cooking meth." Upon receipt of consent from the defendants, Sergeant Long searched their bags. Sergeant Mathis identified from photographs taken at the scene all the items necessary for the manufacture of methamphetamine. Specifically, he discussed a photograph of a bag of what appeared to him to be crushed pseudoephedrine. He explained that one of the initial steps, after acquiring the necessary items, is to crush the pseudoephedrine to simplify the reaction process.

To the extent Hinson's testimony contradicts the testimony of the State's witnesses, we will not disturb the jury's implicit credibility findings. See Sheffield, 676 S.W.2d at 547. The State presented ample evidence for the jury to conclude that the Defendant had begun "the active modification of a commercial product for use in methamphetamine creation." Tenn. Code Ann. § 39-17-435(c). Accordingly, the evidence is sufficient to support the Defendant's conviction for initiation of a process to manufacture methamphetamine.

The Defendant also challenges the sufficiency of the evidence for his felony possession of drug paraphernalia conviction. Under Tennessee Code Annotated section 39-17-425 (2006), the following is a Class E felony:

> to deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, knowing, or under circumstances where one reasonably

should know, that it will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of this part.

Id. at -425(b)(1). Put another way, "[t]he law in question proscribes as a Class E felony the possession of drug paraphernalia with intent to deliver the paraphernalia." State v. Edward Poe, No. M2007-01714-CCA-R3-CD, 2008 WL 732147 at * 6 (Tenn. Crim. App. Mar. 17, 2008). Drug paraphernalia is defined as "all equipment, products and materials of any kind which are used, intended for use, or designed for use in . . . manufacturing, compounding, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling or otherwise introducing into the human body, a controlled substance." Tenn. Code Ann. § 39-17-402(12) (2006).

Possession, in Tennessee, may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). Additionally, one may be in possession (of an item) alone or jointly with others. State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Constructive possession means to have "the power and intention at a given time to exercise dominion and control over [the contraband] either directly or through others." Shaw, 375 S.W.3d at 903 (quoting State v. Patterson, 966 S.W.2d 435, 445 (Tenn. Crim. App. 1997)). This Court has stated, however, that "[t]he mere presence of a person in an area where drugs are discovered is not, alone, sufficient." State v. Bigsby, 40 S.W.3d 87, 90 (Tenn. Crim. App. 2000) (citing State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987)). "Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs." Cooper, 736 S.W.2d at 129.

Here, the record contains sufficient evidence to establish that the Defendant possessed drug paraphernalia. Sergeant Long testified that after the defendants told him that they were about to cook methamphetamine, they consented to a search of their bags. The search revealed all the components necessary for the manufacture of methamphetamine under the "shake and bake" method. Sergeant Mathis identified from the photographs needles, plastic bottles, tubing, a funnel, and a coffee filter and explained how each of these items was used either in the manufacture or the consumption of the methamphetamine.

Although the record contains evidence to sufficiently establish possession, the record does not establish that the Defendant possessed drug paraphernalia with the intent to deliver it. The State points to no facts in the record indicating an intent on the part of the Defendant to deliver, nor do we find any from our review. In fact, the State contends in its brief, "[f]rom this evidence, the jury could have inferred that the defendant . . . possess[ed] with

the intent to *use*[5] drug paraphernalia to manufacture a controlled substance." (emphasis added).

From our review of the record, we agree with the State that the record does contain sufficient evidence to establish that the Defendant intended "to use drug paraphernalia to manufacture a controlled substance." Sergeant Mathis testified that from looking at the items found in the bags he surmised that the defendants intended to consume the methamphetamine by injection. However, we are unable to find any evidence of the Defendant's intent to deliver the paraphernalia. Thus, we must modify the conviction to misdemeanor possession of drug paraphernalia, a lesser included offense "that does not include the element of transfer." Edward Poe, 2008 WL 732147, at *6; see also Tenn. Code Ann. § 39-17-425(a)(1).

Because we have modified the conviction to a Class A misdemeanor, we likewise must modify the sentence. Accordingly, we modify the sentence to eleven months and twenty-nine days and the fine to $2,500. See Edward Poe, 2008 WL 732147, at *6. The sentence will remain concurrent to his sentence for initiation of a process to manufacture methamphetamine for a total effective sentence of twelve years. We will not disturb the manner of service of the sentence.

## CONCLUSION

For the reasons articulated above, we affirm the Defendant's convictions for initiation of a process to manufacture methamphetamine and possession of drug paraphernalia as modified. We, however, reverse and dismiss the Defendant's conviction for manufacture of methamphetamine.

_____
JEFFREY S. BIVINS, JUDGE

---

[5] We emphasize that felony possession of drug paraphernalia requires intent to deliver, whereas misdemeanor possession requires intent to use the drug paraphernalia. See Tenn. Code Ann. § 39-17-425(a)-(b).