IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 5, 2019

**STATE OF TENNESSEE v. MICHAEL AUSTIN**

**Appeal from the Criminal Court for Shelby County**
No. 15-04179        Chris Craft, Judge

_____

**No. W2017-02171-CCA-R3-CD**
_____

The Defendant, Michael Austin, was convicted by a Shelby County Criminal Court jury of aggravated robbery, a Class B felony; convicted felon in possession of a firearm, a Class C felony; and driving with a revoked, suspended or cancelled license, a Class A misdemeanor. The trial court sentenced the Defendant as a Range I, standard offender to eight years for the aggravated robbery conviction, three years for the firearm conviction and six months for the driving conviction and ordered that the felony sentences be served consecutively to each other, for a total effective sentence of eleven years in the Department of Correction. On appeal, the Defendant challenges the sufficiency of the convicting evidence for his felony convictions and argues that the trial court erred in ordering consecutive sentences. Following our review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR., and ROBERT H. MONTGOMERY, JR., JJ., joined.

Jessica L. Gillentine, Bartlett, Tennessee (on appeal); and Larry E. Fitzgerald, Memphis, Tennessee (at trial), for the appellant, Michael Austin.

Herbert H. Slatery III, Attorney General and Reporter; Robert W. Wilson, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Abby Wallace and Jose Leon, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

On the evening of January 23, 2015, a masked gunman entered a Shelby County Dollar General store where Deana Jeffries was working, robbed her at gunpoint of $207 from the store's cash register, and fled out the door, where another store employee, Walter Taylor III, watched him get in the passenger side of a light-colored SUV or van that sped off into a residential neighborhood. A few minutes later, Shelby County Sheriff's deputies spotted a light-colored van traveling at a high rate of speed from the neighborhood. When they stopped the vehicle, they found the Defendant dressed only in thermal underwear sitting in the driver's seat of the vehicle and Jack Austin sitting in the front passenger seat. They also found a loaded revolver in the glove box, $207 in cash in Jack Austin's front right pocket, and clothing and a face mask in the rear of the vehicle that matched the clothing worn by the armed robber. The Defendant and Jack Austin were subsequently indicted together for aggravated robbery. The Defendant was indicted alone for the additional counts of convicted felon in possession of a firearm, felony evading arrest, and driving while license revoked, suspended, or cancelled. At the conclusion of their joint trial, Jack Austin was convicted of aggravated robbery, while the Defendant was convicted of aggravated robbery and driving while license revoked, suspended or cancelled and acquitted of felony evading arrest. Following the second portion of his trial, the Defendant was also convicted of being a convicted felon in possession of a firearm.

## FACTS

Deana Jeffries, the assistant manager of the Dollar General store in Millington, Tennessee, testified that shortly before the store's 10:00 p.m. closing time on January 23, 2015, a man dressed in black pants, black shirt, black shoes, and a black ski mask entered the store through the front door. She said he was armed with a black or possibly black and silver handgun and ordered everyone to get down. He then forced her to go around the counter to open the cash register and held the gun pointed directly to her face as he ordered her to "hurry up." When she finally succeeded in opening the cash register, she complied with his instructions to place the cash inside a white plastic grocery store bag. The gunman took the cash and fled from the store through the front door.

Ms. Jeffries identified the store surveillance tape of the incident, which was admitted as an exhibit and published to the jury. She said she gave a statement to police that night and later attempted to identify the perpetrator from photographs she was shown by the police but was unable to do so because the gunman wore a ski mask. She was, however, able to tell that he had brown skin. On cross-examination, she testified that the gunman took approximately $200 in cash from the register. She estimated that the gunman was "a tad taller" than her 5'10" height.

Walter Taylor III, a cashier at the store, testified that he was stocking the shelves near closing time when he heard a woman scream and someone say, "Get on the ground." He said he walked to the end of the aisle, saw someone dressed in black with his arm stretched out holding a gun, and reacted by running out one of the store's rear emergency exits to the parking lot, where he called 9-1-1. While he was outside, he saw someone run to a van or SUV that was waiting across the street with its lights on and get into the passenger side of the vehicle. As soon as the person got into the vehicle, it immediately "sped off" into the Waverly Plantation neighborhood, leading Mr. Taylor to conclude that the vehicle's engine must have already been running. Mr. Taylor identified a photograph of a van that appeared similar to the vehicle that he saw that night.

Officer Sharif James of the Shelby County Sheriff's Department testified that he and his partner were only two to five minutes away from the Dollar General and consequently the first two officers to respond to the armed robbery call. After learning that the suspect had been seen fleeing eastbound on Waverly Farms Road into the Waverly Plantation neighborhood, he had a "Be on the lookout" for, or "BOLO," issued for the suspect and vehicle. Officer James testified that there were only two ways to enter or exit the subdivision, either Waverly Farms Road or the next street, which was Duncan. He said Ms. Jeffries provided a description of the armed robber and informed him that $207 had been taken from the store's cash register, while Mr. Taylor provided a description of the get-away vehicle as a light-colored truck or SUV or van.

Officer Heidi Moulder of the Shelby County Sheriff's Department testified that she and her partner received the BOLO and drove to Duncan to wait because they knew other officers had the only other entrance to the neighborhood covered. As they waited, they saw a light-colored SUV-type vehicle that was traveling at a high rate of speed turn westbound on Duncan from Northland Drive in the process running a stop sign. She said she and her partner activated their blue lights in an attempt to initiate a stop but the vehicle continued at a high rate of speed on Duncan to Raleigh Millington before finally pulling over. As she neared the vehicle, she was able to determine that it was a van.

Officer Moulder testified that she approached the passenger side of the van while her partner approached the driver's side. She said the passenger, who was very nervous and talkative, told her that he and the driver had been at their aunt's house. Because he was so nervous, she asked him what was in the vehicle's glove box. At that point, the driver turned his head to inform her that the glove box was locked, and they had no key.

Inside the glove box, the officers found a dark gray metal handgun with a brown handle that was wrapped in a "do-rag." In the rear of the van, they found a black "hoodie" turned inside out, a pair of black pants, a pair of black shoes with a pink stripe on the bottom, a "completely covered skull mask," and a white plastic bag. In the second

row of the van, they found a fur-lined hood and a pair of black gloves. Finally, they found $207 in cash in the passenger's front right pocket. Officer Moulder identified, among other things, photographs of the van and the clothing recovered, which she agreed was consistent with the clothing worn by the perpetrator in the store surveillance video. She made a positive courtroom identification of the Defendant as the driver of the van and his co-defendant, Jack Austin, as the passenger.

On cross-examination, Officer Moulder acknowledged that the Defendant pulled over and stopped the van at Raleigh Millington without trying to drive around traffic and without having an officer in front of him to force him to stop. On redirect examination, she testified that she and her partner reached speeds of 72 miles per hour in their pursuit of the Defendant and were unable to gain any ground on him until he was forced to stop due to the traffic on Raleigh Millington.

Officer Billy Gray of the Shelby County Sheriff's Department, who was partnered with Officer Moulder on the night of January 23, 2015, corroborated much of Officer Moulder's testimony regarding their stop of the van and the items they found inside. In addition, he testified that the Defendant was wearing only a gray thermal top and bottom, despite the "30-something" degree temperature. He said the Defendant provided him a Tennessee identification-only card when he asked for the Defendant's driver's license, and he subsequently learned that the Defendant's driver's license had been suspended. He stated that the glove box where the weapon was located was within an arm's reach of the Defendant's driver's seat and that the glove box was unlocked. He said that the Defendant and his co-defendant were both approximately 6' to 6'2" in height.

Rochelle Cooper, an investigator with the Shelby County District Attorney's Office, identified an official copy of the Defendant's driving record, which showed that his license had been suspended on July 10, 2014.

The Defendant and his co-defendant each elected not to testify and neither presented any evidence in their defense.

## ANALYSIS

### I. Sufficiency of the Evidence

As his first issue, the Defendant challenges the sufficiency of the evidence in support of his felony convictions. Specifically, he contends that the "highly circumstantial evidence" was insufficient to establish his identity as the individual who committed an armed robbery of the store or to establish that he was in possession of the handgun found in the vehicle's glove box. The State responds by arguing that the

evidence was sufficient for a reasonable jury to infer that the Defendant was the individual who used the handgun to commit an armed robbery of the store. We agree with the State.

When the sufficiency of the convicting evidence is challenged on appeal, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). It is not the role of this court to reweigh or reevaluate the evidence, nor to substitute our own inferences for those drawn from the evidence by the trier of fact. State v. Reid, 91 S.W.3d 247, 277 (Tenn. 2002).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)).

"A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W. 2d 913, 914 (Tenn. 1982).

In support of his contention that the circumstantial evidence was insufficient to establish his identity as the store's armed robber, the Defendant cites, among other things, the inability of either store employee to identify him, Mr. Taylor's seeing the suspect enter the passenger side of the vehicle, and the fact that the gun found in the glove box was grey and brown rather than the black weapon described by Ms. Jeffries.

However, when viewed in the light most favorable to the State, the evidence was more than sufficient for a rational jury to find beyond a reasonable doubt that the

Defendant was the individual who committed the armed robbery of the store. Within a very short time of the 9-1-1 call, the Defendant, dressed only in his long underwear, was stopped after he was seen traveling at a high rate of speed in a vehicle similar to the vehicle in which a suspect fled the store and from the same neighborhood into which the suspect vehicle had fled. In addition, clothing was found in the vehicle that matched clothing worn by the perpetrator, a dark grey gun with a black handle was found in the vehicle's glove box, and the exact amount of cash taken from the store was found in the passenger's pocket. It would not be unreasonable for the jury to infer that the Defendant and his co-defendant changed positions in the vehicle at some point after the Defendant ran to the passenger side to make his escape from the area. Moreover, the jury was instructed on the doctrine of criminal responsibility, under which the Defendant could be found guilty of armed robbery even if it was his co-defendant, rather them himself, who actually entered the store and robbed the manager at gunpoint. We, therefore, conclude that the evidence is sufficient to sustain the Defendant's conviction for aggravated robbery.

We further conclude that the evidence is sufficient to sustain the Defendant's conviction for convicted felon in possession of a firearm. Possession may be actual or constructive. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). Constructive possession of a firearm "may occur only where the personally unarmed participant has the power and ability to exercise control over the firearm." Key v. State, 563 S.W.2d 184, 188 (Tenn. 1978).

The Defendant argues that the State failed to present any proof "that the [D]efendant had the power or ability at any time to exercise control over the firearm." In support, the Defendant relies on the fact that the gun was found in the glove box located directly in front of the passenger's, rather than the driver's, seat of the vehicle. The Defendant, however, ignores the fact that the armed robber, wearing clothing identical to the clothing found in the rear of the van, was seen entering the passenger side of the van immediately after the robbery. The Defendant also ignores testimony from Officer Gray that the glove box was located within an arm's reach of the driver's seat of the vehicle. From all the evidence, a rational jury could reasonably conclude that the Defendant was in possession of the weapon found in the glove box. We, therefore, affirm the Defendant's convictions for aggravated robbery and convicted felon in possession of a firearm.

## II. Consecutive Sentences

The Defendant also challenges the trial court's imposition of consecutive sentencing, arguing that the trial court abused its discretion in finding that he met the "dangerous offender" criterion of the consecutive sentencing statute. The State argues that the trial court properly imposed consecutive sentences because the Defendant, who was on probation from a prior violent felony at the time of the instant offenses and who held a gun directly to the face of the store manager during the robbery, qualified as a dangerous offender whose behavior evidenced little or no regard for human life and no hesitation in committing a crime when the risk to human life was high. We, again, agree with the State.

A trial court may order multiple sentences to run consecutively if it finds by a preponderance of evidence that one or more of the seven factors listed in Tennessee Code Annotated section 40-35-115(b) applies, including the one that the trial court found to be applicable in this case: the Defendant was a dangerous offender whose behavior indicated little or no regard for human life and no hesitation about committing a crime in which the risk to human life was high. See Tenn. Code Ann. § 40-35-115(b)(4). When the court bases consecutive sentencing upon its classification of the defendant as a dangerous offender, it must also find that an extended sentence is necessary to protect the public against further criminal conduct by the defendant and that the consecutive sentences reasonably relate to the severity of the offense committed. State v. Lane, 3 S.W.3d 456, 460-61 (Tenn. 1999); State v. Wilkerson, 905 S.W.2d 933, 937-38 (Tenn. 1995). We review the trial court's consecutive sentencing determinations for an abuse of discretion, with a presumption of reasonableness afforded to the trial court's decision. See State v. Pollard, 432 S.W.3d 851, 860 (Tenn. 2013) (applying the same deferential standard announced in State v. Bise, 380 S.W.3d 682, 707 (Tenn. 2012) to the review of a trial court's order of consecutive sentencing).

In ordering consecutive sentencing under the "dangerous offender" criterion of the statute, the trial court found as a "particularly disturbing" fact that the Defendant committed the instant crimes while on probation for a prior violent felony. The trial court also made the requisite additional Wilkerson findings that confinement for an extended period was necessary to protect society from further criminal conduct by the Defendant and that the aggregate length of his sentences was reasonably related to his offenses. We can discern no error in the trial court's sentencing determinations. Accordingly, we affirm the sentences imposed by the trial court.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE