IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs April 2, 2019

## STATE OF TENNESSEE v. THORNE PETERS

**Appeal from the Criminal Court for Shelby County**
**No. 15-05021      J. Robert Carter, Jr., Judge**

_____

### No. W2018-01328-CCA-R3-CD

_____

The Defendant, Thorne Peters, was convicted by a Shelby County Criminal Court jury of possession of a firearm during the commission of a felony drug offense, a Class D felony; possession of marijuana with intent to sell, a Class E felony; and possession of marijuana with intent to deliver, a Class E felony. The trial court merged the drug convictions and imposed an effective sentence of four years. On appeal, the Defendant challenges the sufficiency of the evidence convicting him of possession of a firearm during the commission of a felony drug offense. After review, we affirm the judgments of the trial court.

**Tenn. R. App. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS, P.J., and TIMOTHY L. EASTER, J., joined.

Stephen C. Bush, District Public Defender, and Harry E. Sayle III, Assistant District Public Defender (on appeal); and Thorne Peters, Pro Se (at trial), for the appellant, Thorne Peters.

Herbert H. Slatery III, Attorney General and Reporter; M. Todd Ridley, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Matt McLeod, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The Defendant moved from California to Memphis with his girlfriend, Linda Harrah, with the goal of getting arrested and challenging Tennessee's marijuana laws.

On February 3, 2015, officers executed a search warrant of a home owned by Ms. Harrah and frequented by the Defendant, resulting in the Defendant being indicted for two counts of possession of a firearm during the commission of a felony drug offense, possession of marijuana with intent to sell, and possession of marijuana with intent to deliver. The State nolle prosequied one of the firearm charges before trial, and the trial court granted the Defendant's motion to proceed pro se.

At trial, Sergeant Claudio Fernandez with the Shelby County Sheriff's Office testified that he set up surveillance of the house at 758 Marianna Street based on the Defendant's Facebook posts and information received from sources indicating that the Defendant was selling marijuana. Over the course of different times and different days, Sergeant Fernandez observed a considerable amount of foot and vehicle traffic and concluded that it was indicative of drug activity. He obtained a search warrant for the property, and officers executed it on February 3, 2015.

The house was surrounded by a chain-link fence with a locked gate, which officers had to cut with bolt cutters to enter the yard. They were confronted by two aggressive dogs that tried to bite them. The officers used a shotgun to make a loud noise to distract the dogs. Once the dogs ceased to be a threat, the officers approached the front door and announced themselves. When the occupants of the house did not open the door, the officers forced their way into the house. The officers detained the Defendant and Ms. Harrah without incident.

In conducting their search of the property, officers found three mason jars containing marijuana, a plastic bag containing marijuana, a digital scale, and two firearms. One of the firearms, a .45-caliber handgun, was loaded with a magazine and had a round in the chamber. It was found in the front bedroom off the entryway, sitting on a floor speaker and not obscured in any way. The Defendant gave a statement to police in which he said that the marijuana they found "was his and that he was selling it." The Defendant also told the officers that his fingerprints might be on the .45-caliber handgun.

Detective Gary Lambert of the Shelby County Sheriff's Office investigated the case with Sergeant Fernandez and testified consistently with him. Detective Lambert elaborated that in the statement given by the Defendant, "[h]e really spoke about selling marijuana, buying it by the pound[,] and he had several customers." The Defendant also told them that the firearms belonged to another individual but that he knew they were in the house and that his thumbprint and forefinger print might be on one of them.

Agent Peter Hall, a forensic scientist with the Tennessee Bureau of Investigation at the time of the incident, analyzed the plant matter recovered from 758 Marianna Street

and determined that it was 297.31 grams of marijuana. Thomas Shouse, a criminal investigator for the Shelby County District Attorney's Office, tested the firearms recovered during the search. The .45-caliber handgun was determined to be operable.[1]

Linda Harrah testified on the Defendant's behalf. Ms. Harrah stated that she met the Defendant in a cannabis group on Facebook when they both lived in California. The Defendant decided to move to Memphis, and she sold her house in California and came with him to support his "quest to . . . free us all from the prohibition of cannabis." The Defendant's express purpose in moving to Memphis was to "put the law on trial." He used Facebook as a platform to share his pro-marijuana views and posted images of himself dealing marijuana. He placed these posts on the Facebook pages of the Shelby County Sheriff's Office, the Mayor, and the Shelby County District Attorney.

Ms. Harrah said that she and the Defendant jointly owned a home at 751 Marianna Street and that she alone owed the home at 758 Marianna. The Defendant lived at 751 Marianna, but he spent time at her residence. At the time officers executed the search warrant, the Defendant was at her home with a large amount of cannabis because he was "going to do the cannabag challenge, which is like the ice-bucket challenge, with cannabis."

The Defendant, testifying in a lengthy narrative, explained that he was "against all prohibition" and admitted that "[o]n February the 3rd, 2015[, he] was dealing cannabis so that [he] could make them come and arrest [him], so [he] could take on the legal industrial complex here at the trial of the millennium[.]" He said that he had been selling marijuana for over a year on Facebook to encourage his arrest. He "wanted to make certain that all of the police force knew that [he] was dealing weed in Memphis." However, he stated that the reason there was a large amount of marijuana at the house that particular day was because he was going to "perform a cannabag challenge, to pour pot on somebody's head." He claimed that, even though he sold marijuana, he "never dealt in the home. [He] did [his] deals in the street [or] . . . a honey-hole at the abandoned house across the street. . . . that way no house would be in jeopardy." The Defendant summarized that on

> February 3rd, 2015[,] I was dealing pot on Facebook as I have been for over a year. I was putting those posts on the walls of those who would come and arrest me, so they could arrest me. So I am exactly where I intended to be, right here before this jury.

---

[1] A .25-caliber handgun was also recovered but was determined to be inoperable. The count of the indictment relating to that firearm was nolle prosequied before trial.

On cross-examination, the Defendant acknowledged that selling marijuana was not legal, but he elaborated that "[t]here's no such thing as legal, or illegal[.]" He denied living at 758 Marianna Street but admitted to spending "many nights there." He said that he told the detectives that he hates guns but admitted to "tak[ing] a picture or posing with some[.]" He acknowledged to posting a picture on his Facebook page of him holding guns with a caption that read:

> I was just sitting around hoping some sorry want to be wigger, mother-fu\*\*er was going to stop by with his partner to rob me of all this weed and money, I'm holding, so I can take target practice on their sorry asses. If you know anybody that wants to try me, let them know, I will be up all night, armed and dangerous.

The Defendant admitted that the sale of marijuana can be dangerous and that he kept the dogs at the property in case the "bad guys" or "the cops" showed up.

Leo Awgowhat testified that the guns recovered from 758 Marianna Street belonged to him and that he had given them to Ms. Harrah for safekeeping because he had children at home.

Following the conclusion of the proof, the jury convicted the Defendant as charged of possession of a firearm during the commission of a felony drug offense, possession of marijuana with intent to sell, and possession of marijuana with intent to deliver.

## ANALYSIS

The Defendant challenges the sufficiency of the evidence convicting him of possession of a firearm during the commission of a felony drug offense. He argues that he did not possess the firearm, there was no evidence that he had "intent to go armed," and there was "no commission of or attempt to commit a dangerous felony."

When the sufficiency of the evidence is challenged, the relevant question of the reviewing court is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979); see also Tenn. R. App. P. 13(e) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt."); State v. Evans, 838 S.W.2d 185, 190-92 (Tenn. 1992); State v. Anderson, 835 S.W.2d 600, 604 (Tenn. Crim. App. 1992). All questions involving the credibility of witnesses, the weight and value to be given the

evidence, and all factual issues are resolved by the trier of fact. See State v. Pappas, 754 S.W.2d 620, 623 (Tenn. Crim. App. 1987). "A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State." State v. Grace, 493 S.W.2d 474, 476 (Tenn. 1973). Our supreme court has stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

Bolin v. State, 405 S.W.2d 768, 771 (Tenn. 1966) (citing Carroll v. State, 370 S.W.2d 523 (1963)). "A jury conviction removes the presumption of innocence with which a defendant is initially cloaked and replaces it with one of guilt, so that on appeal a convicted defendant has the burden of demonstrating that the evidence is insufficient." State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Matthews, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990) (citing State v. Brown, 551 S.W.2d 329, 331 (Tenn. 1977); Farmer v. State, 343 S.W.2d 895, 897 (Tenn. 1961)). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence and the inferences to be drawn from this evidence and the extent to which the circumstances are consistent with guilt and inconsistent with innocence are questions primarily for the jury. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). This court, when considering the sufficiency of the evidence, shall not reweigh the evidence or substitute its inferences for those drawn by the trier of fact. Id.

In order to sustain the Defendant's firearm conviction, the State had to prove that the Defendant possessed a firearm with the intent to go armed during the commission of or attempt to commit a dangerous felony, i.e., the possession of marijuana offenses in

Counts 3 and 4. Tenn. Code Ann. §§ 39-17-1324(a), (i)(1)(L). Thus, three elements must be satisfied: (1) that the Defendant possessed a firearm; (2) that the possession was with the "intent to go armed"; and (3) that the first two elements occurred during the commission or attempted commission of a "dangerous felony." State v. Fayne, 451 S.W.3d 362, 369 (Tenn. 2014).

Possession may be constructive as well as actual. State v. Shaw, 37 S.W.3d 900, 903 (Tenn. 2001); State v. Transou, 928 S.W.2d 949, 955-56 (Tenn. Crim. App. 1996); State v. Cooper, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). "Constructive possession requires that a person knowingly have the power and the intention at a given time to exercise dominion and control over an object, either directly or through others. In essence, constructive possession is the ability to reduce an object to actual possession." State v. Copeland, 677 S.W.2d 471, 476 (Tenn. Crim. App. 1984). "Elements of possession for purposes of constructive possession are questions of fact for the jury . . . ." State v. Ronald Killebrew, No. W2003-02008-CCA-R3-CD, 2004 WL 1196098, at *3 (Tenn. Crim. App. May 26, 2004).

The Defendant contends that he did not have constructive possession of the .45-caliber handgun because he did not live at 758 Marianna and did not own the gun. Although ownership may indicate possession, one may also be in possession of a weapon without holding actual title to it. See State v. Justin David Fife, No. M2013-02211-CCA-R3-CD, 2014 WL 2902276, at *4-5 (Tenn. Crim. App. June 26, 2014). In this case, the Defendant acknowledged that he knew the gun was in the house. He had the power to possess it because it was located in plain sight, immediately accessible in the front bedroom of the home, and he told officers they might find his fingerprints on the gun. In addition, the Defendant posted pictures on Facebook of himself holding other guns with a caption taunting people to come rob him so that he could shoot them. Viewed in the light most favorable to the State, a rational trier of fact could find that the Defendant had the power and intention to possess the firearm.

The Defendant also argues that there was not sufficient evidence to show that he intended to go armed. In support of his assertion, the Defendant cites his testimony that the gun was at the house for safekeeping and that he does not like guns. However, the evidence demonstrates that the Defendant handled the gun because he admitted that his thumbprint and forefinger print would be found on it. Further, as noted above, he posted pictures on Facebook of himself holding other guns and threatening to shoot people that came to take his drugs. Thus, viewed in the light most favorable to the State, a rational trier of fact could find that the Defendant had the intention to go armed.

The Defendant lastly argues that he did not commit or attempt to commit a dangerous felony because he was not dealing marijuana from the house at the time of his

arrest but instead that "the marijuana was there for the purpose of engaging in the cannabag challenge, not to sell or deliver." However, the Defendant admitted that he was dealing marijuana. He also kept aggressive dogs at the house to protect his marijuana from the police. In addition, the police found a digital scale, two mason jars containing marijuana, and a plastic bag containing marijuana at the house, and the Defendant told the officers that he intended to sell this marijuana. In the light most favorable to the State, a rational trier of fact could find that the Defendant possessed the marijuana with intent to sell or deliver it. Thus, the Defendant was committing a dangerous felony.

## CONCLUSION

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____
ALAN E. GLENN, JUDGE